Slip Op. 04-58

# UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
:
**MOTION SYSTEMS CORPORATION**, :
:
Plaintiff, :
:
v. : **Court No. 03-00146**
:
**GEORGE W. BUSH**, President of the :
United States, and : Before: Timothy C. Stanceu,
: Judge
**ROBERT B. ZOELLICK**, United States :
Trade Representative, :
:
Defendants, and :
:
**CCL INDUSTRIAL MOTOR LTD.**, :
:
Defendant-Intervenor. :
———————————————————:

[Summary judgment granted for defendants]

Decided: June 3, 2004

*Fitch, King & Caffentzis* (*Richard Carville King, James Caffentzis*) for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Jeanne E. Davidson*, Deputy Director, *Steven C. Tosini*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *David L. Weller*, Assistant General Counsel, Office of the United States Trade Representative, of counsel, for defendants.

*Kaye Scholer LLP* (*Michael P. House and Margaret S. Rudin*) for defendant-intervenor.

## OPINION

STANCEU, Judge:

Plaintiff Motion Systems Corporation challenges a decision by the President of the United States to deny import relief to the U.S. industry manufacturing "pedestal actuators," which are components of electrically-powered vehicles used by persons whose mobility is impaired. Plaintiff's principal argument is that the President exceeded his statutory authority in declining to impose import quotas on pedestal actuators from the People's Republic of China ("China") following a recommendation by the United States International Trade Commission that import quotas are needed to remedy "market disruption" adversely affecting the U.S. pedestal actuator industry. Plaintiff contends in particular that the President acted contrary to the relevant statute in denying relief without quantifying the adverse impact of providing relief and demonstrating that this adverse impact was "clearly greater" than the benefits that such relief would provide to the domestic industry.

Motion Systems has named as defendants the President and the United States Trade Representative, who issued a recommendation to the President addressing the issue of import relief after publishing a notice soliciting comment and conducting a public hearing. In addition to its primary argument, plaintiff raises objections to the U.S. Trade Representative's conduct of the public hearing, to the President's considering certain political factors that Motion Systems considers improper, and to the apparent denial of Motion Systems' request to the U.S. Trade Representative that the President reconsider the final decision.

This matter is before the court on two motions by defendants. Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1) and, previous to that motion, sought dismissal of this action through judgment upon an agency record pursuant to USCIT Rule 56.1.

This court concludes that it has subject matter jurisdiction of this case under 28 U.S.C. § 1581(i). This court further concludes that the President's decision declining to impose restraints on imports of pedestal actuators must be upheld because it is within the authority delegated to the President by the relevant statute. The court finds no basis to conclude that the presidential decision misconstrued statutory provisions or must be overturned for noncompliance with procedural requirements. Additionally, the court finds no basis to order a reopening of proceedings for reconsideration of the final presidential decision. Accordingly, for the reasons discussed below, defendants are entitled to judgment as a matter of law.

## I. Background

The pedestal actuators imported from China, and the pedestal actuators manufactured in the United States by Motion Systems Corporation, are motor-driven mechanical devices chiefly used as components in mobility scooters and electric wheelchairs. As typically installed in a mobility scooter or electric wheelchair, a pedestal actuator converts rotary motion, created by the electric motor, to the linear motion required to raise and lower the seat.

Motion Systems Corporation sought import relief through the administrative proceedings summarized below. Electric Mobility Corporation, a manufacturer of mobility scooters and purchaser of Chinese-origin pedestal actuators, opposed the imposition of import relief in those

administrative proceedings, as did defendant-intervenor CCL Industrial Motor Ltd., a Chinese manufacturer of pedestal actuators.

### A.  Procedures Leading to the President's Decision to Deny Relief

Motion Systems, on August 19, 2002, petitioned the U.S. International Trade Commission (the "USITC") for relief from imports of pedestal actuators from China, under procedures established by section 421 of the Trade Act of 1974, as amended (19 U.S.C. § 2451) ("Section 421").  Section 421, added to the Trade Act of 1974 by the U.S.-China Relations Act of 2000, establishes procedures under which the President, following an affirmative "market disruption" determination by the USITC, is empowered to proclaim "increased duties or other import restrictions" on a product of China that "is being imported into the United States in such increased quantities or under such conditions as to cause or threaten to cause market disruption to the domestic producers of a like or directly competitive product."  19 U.S.C. § 2451(a).  "Market disruption" is found to exist "whenever imports of an article like or directly competitive with an article produced by a domestic industry are increasing rapidly, either absolutely or relatively, so as to be a significant cause of material injury, or threat of material injury, to the domestic industry."  19 U.S.C. § 2451(c).

The Section 421 procedures involve separate determinations by the USITC and potentially by the President, who is to make the actual decision whether or not to grant import relief after receiving a recommendation of the U.S. Trade Representative.  To initiate the process, a domestic producer may petition the USITC to investigate whether a product of China is being imported into the United States in such increased quantities or under such conditions as to cause

or threaten to cause market disruption to domestic producers of like or directly competitive products.  19 U.S.C. § 2451(b).

The statute directs the USITC, upon making an affirmative determination of market disruption, to propose actions in the form of increased duties or other import restrictions necessary to prevent or remedy the market disruption.  19 U.S.C. § 2451(f).  The statute further directs the U.S. Trade Representative, after receiving the report of the USITC, to publish in the Federal Register notice of any import relief measure the U.S. Trade Representative proposes to be taken and to invite public comment, with the opportunity to request a public hearing on the appropriateness of the proposed measure.  19 U.S.C. § 2451(h)(1).  Further, the statute authorizes the U.S. Trade Representative to enter into agreements with the People's Republic of China under which China would take action to prevent or remedy market disruption and provides that the Trade Representative "should seek to conclude such agreements" within a 60-day period commencing five days after receiving an affirmative determination of the USITC.  19 U.S.C. § 2451(j)(1).

Section 421 vests in the President the discretion whether to provide import relief.  Within 15 days of receiving the Trade Representative's final recommendation, the President is directed to provide import relief for the domestic industry "unless the President determines that provision of such relief is not in the national economic interest of the United States" or, in extraordinary cases, that it would cause serious harm to the national security.  19 U.S.C. § 2451(k)(1).  The import relief may take the form of increased duties or other import restrictions and is to remain in effect "for such period as the President considers necessary to prevent or remedy the market disruption."  19 U.S.C. § 2451(a).

The President's discretion to deny import relief following an affirmative USITC finding of market disruption is subject to specific limitations.  The statute provides that "[t]he President may determine . . . that providing import relief is not in the national economic interest of the United States only if the President finds that the taking of such action would have an adverse impact on the United States economy clearly greater than the benefits of such action."  19 U.S.C. § 2451(k)(2).

In the proceedings leading up to this litigation, the USITC issued its report on the petition of Motion Systems on November 7, 2002, following the submission of briefs and a public hearing.  *See Pedestal Actuators from China:  Investigation No. TA–421–1*, USITC Pub. 3557. The USITC concluded in its report that pedestal actuators from China are being imported in such increased quantities or under such conditions as to cause market disruption to the domestic producers of like or directly competitive products.  The USITC proposed, as a remedy to the market disruption it had found to exist, a three-year period of quantitative restrictions on Chinese pedestal actuator imports, to consist of 5,626 units in the first year, 6,470 units in the second year, and 7,440 units in the third year.[1]  *See International Trade Commission:  Pedestal Actuators*, 67 Fed. Reg. 69,557, 69,558 (Nov. 18, 2002).

After seeking, unsuccessfully, an agreement with the People's Republic of China to prevent or remedy market disruption from pedestal actuator imports, and after inviting written

---

[1] These quantitative limits were proposed by Vice Chairman Hillman and Commissioner Miller.  As authorized by 19 U.S.C. § 2451(g)(2)(C), Commissioner Koplan separately proposed a three-year period of quantitative restrictions consisting of 4,425, 4,514, and 4,604 units per year, respectively.  Chairman Okun and Commissioner Bragg made negative determinations concerning market disruption.

comments[2] and conducting a public hearing, the U.S. Trade Representative submitted its recommendation to the President on January 2, 2003.[3] On January 17, 2003, the President issued a determination not to impose restrictive measures on imports of pedestal actuators from China.

B.  The President's Decision to Deny Relief to the Domestic Pedestal Actuator Industry

The President's decision was released in the form of a Federal Register notice setting forth a memorandum to the U.S. Trade Representative ("USTR" or "Trade Representative").[4] The decision included the following findings:  (1) providing import relief for the U.S. pedestal actuator industry is not in the national economic interest; and (2) import relief would have an adverse impact on the United States economy clearly greater than the benefits of such action.

The presidential decision went on to state four reasons for the decision, as follows: (1) the facts indicate that the USITC's recommended quota would not likely benefit the domestic industry and instead would cause imports to shift to other offshore sources; (2) even if the quota were to benefit the primary domestic producer (*i.e.*, Motion Systems), the cost of the quota to consumers, downstream purchasers of pedestal actuators, and users of the downstream products would substantially outweigh any benefit to producers' income; (3) the cost of the quota would increase pressure on domestic producers of the downstream products (*i.e.*, mobility scooters and electric wheelchairs) to move offshore, causing more economic harm than good due to the larger

---

[2] Office of the U.S. Trade Representative, *Notice of Proposed Measure and Opportunity for Public Comment Pursuant to Section 421 of the Trade Act of 1974: Pedestal Actuators from the People's Republic of China*, 67 Fed. Reg. 71,007 (Nov. 27, 2002) ("*USTR Notice*").

[3] The U.S. Trade Representative did not make public, and was not required by Section 421 to make public, its recommendation to the President.

[4] The President, *Presidential Determination on Pedestal Actuator Imports from the People's Republic of China*, 68 Fed. Reg. 3,157 (Jan. 22, 2003).

number of workers in the downstream industry; and (4) the quota would negatively affect the many elderly and disabled purchasers of the downstream products. The portion of the presidential decision setting forth the two findings and the four aforementioned reasons reads as follows.

> After considering all relevant aspects of the investigation, I have determined that providing import relief for the U.S. pedestal actuator industry is not in the national economic interest of the United States. In particular, I find that the import relief would have an adverse impact on the United States economy clearly greater than the benefits of such action.
>
> In determining not to provide import relief, I considered its overall costs to the U.S. economy. The facts of this case indicate that imposing the USITC's recommended quota would not likely benefit the domestic producing industry and instead would cause imports to shift from China to other offshore sources.
>
> Even if the quota were to benefit the primary domestic producer, the cost of the quota to consumers, both the downstream purchasing industry and users of the downstream products, would substantially outweigh any benefit to producers' income. The USITC's analysis confirms this conclusion.
>
> In addition, downstream industries are already under pressure to migrate production offshore to compete with lower-cost imports of finished products. Higher component costs resulting from import relief would add to this pressure. Given the significantly larger number of workers in the downstream purchasing industry when compared with the domestic pedestal actuator industry, I find that imposing import restrictions would do more economic harm than good.
>
> Finally, a quota would negatively affect the many disabled and elderly purchasers of mobility scooters and electric wheelchairs, the primary ultimate consumers of pedestal actuators.

C. Motion Systems' Request for Reconsideration of the President's Decision

Following issuance of the President's decision to deny import relief on Chinese-origin pedestal actuators, Motion Systems filed with the U.S. Trade Representative a submission, dated February 12, 2003, requesting "reconsideration" of that decision and citing "new evidence which has come to light since January 17, the date of the President's determination." The "new evidence" consisted of documents that Motion Systems presented in support of claims that Electric Mobility did not reduce the prices of mobility scooters it sold to the Department of Veterans Affairs and did not make an electrically-powered seat lift (which incorporates a pedestal actuator) standard equipment on 70 percent of its models. Motion Systems contended that this "new evidence" contradicted statements made by the president of Electric Mobility Corporation ("EMC"), Michael Flowers, before the USTR hearing and raised credibility concerns. The post-decision submission stated as follows:

> If EMC did not, in fact, include the seat lift as standard equipment on 70 percent of its scooters, then that calls into serious question Mr. Flowers' claim that EMC reduced the prices for those scooters as a result of switching to the lower-priced Chinese unit, particularly since Mr. Flowers acknowledged that EMC did not reduce the price of the seat lift as an option. And if it is the case that EMC did not, in fact, reduce the prices when it switched to the Chinese unit, then it calls into question the credibility of Mr. Flowers' claim that EMC would be forced to increase its prices $200 if relief were granted. Once Mr. Flowers' testimony is put aside, there is no evidence to indicate the extent to which the costs of relief would outweigh the benefits.

Stewart and Stewart letter to USTR, February 12, 2003 at 16-17, in Pl.'s Ex. 2.

In a letter to counsel for plaintiff dated March 7, 2003, the Assistant U.S. Trade Representative for North Asian Affairs, in an apparent reference to the February 12, 2003

submission, acknowledged with appreciation the "supplemental information you have provided" but did not indicate that the President would reconsider the decision to deny import relief.  The March 7, 2003 letter stated, *inter alia*, that "[y]our letter points to evidence that, in your view, shows the sole U.S. purchaser of Chinese pedestal actuators, Electric Mobility, did not reduce prices for its mobility scooters and electric wheelchairs after it began sourcing pedestal actuators from China and thus did not pass along to consumers any cost savings."  That letter went on to state that the issue whether Electric Mobility reduced its prices after purchasing Chinese pedestal actuators was clearly reflected "as disputed between the parties" in the materials before the President at the time of the President's decision, adding that "this issue relates only indirectly to the considerations identified by the President as dispositive in his decision."  This action followed.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

The court concludes that it is granted jurisdiction over the instant action by 28 U.S.C. § 1581(i).  Under paragraphs (2)-(4) of subsection (i) of § 1581, this Court has exclusive jurisdiction of civil actions commenced against the United States, its agencies, or its officers that arise out of any law of the United States providing for "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" [paragraph (2)], "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety" [paragraph (3)], or "administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection . . . ." [Paragraph (4)].

Section 421 provides for increased tariffs for reasons other than raising revenue, specifically, for preventing or remedying market disruption adversely affecting a domestic industry. It also authorizes quantitative import restrictions to serve these same purposes, which are reasons "other than the protection of the public health or safety." Plaintiff has commenced an action against the President of the United States and the U.S. Trade Representative, both of whom are officers of the United States. With respect to the President, status as an officer of the United States stems from the Constitution itself, for the President is the essential constitutional officer under Article II of the Constitution. "The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years . . . ." U.S. CONST., Art. II, § 1. "This grant of authority establishes the President as the chief constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity." *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982). The court concludes, therefore, that this action falls squarely within the express terms of the jurisdictional provisions in § 1581(i)(2) and (i)(3).

Defendants move to dismiss this action for lack of subject matter jurisdiction, advancing an argument based on two contentions. Defendants contend, first, that the President must be dismissed from this action, relying on the recent decision of the United States Court of Appeals for the Federal Circuit in *Corus Group PLC v. Int'l Trade Comm'n.* 352 F.3d 1351 (Fed. Cir. 2003). Specifically, defendants interpret *Corus Group* to require that a challenge such as this to a presidential decision be dismissed for lack of subject matter jurisdiction because of the Federal Circuit's statement in *Corus Group* that "section 1581(i) does not authorize proceedings directly against the President." *Id.,* 352 F.3d at 1359. The second contention by defendants is that this

case may not proceed as a challenge to an action of the U.S. Trade Representative, who in the statutory Section 421 procedure performs the role of advising the President regarding import relief. Defendants argue that this Court, lacking "jurisdiction to entertain plaintiff's claims against the President, likewise lacks jurisdiction to entertain challenges to the President's advisors." *Defs.' Mot. to Dismiss* at 3. According to their argument, the U.S. Trade Representative's recommendation to the President addressing the issue of import relief is purely advisory, rather than determinative of legal rights, and hence it is unreviewable under principles announced by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), and cited by the Federal Circuit in *Corus Group*. Having contended that this action may be brought neither against the President nor against the U.S. Trade Representative, defendants conclude that this court must dismiss this case for lack of subject matter jurisdiction.

The court disagrees with defendants' jurisdictional analysis for two reasons. First, if this court were to construe the Federal Circuit's decision in *Corus Group* to require dismissal of this action, it would be acting contrary to the jurisdictional principles applied by the Federal Circuit in a line of cases in which presidential action was challenged directly, including *Humane Society of the United States v. Clinton,* 236 F.3d 1320 (Fed. Cir. 2001), a decision not overturned by *Corus Group*. *See Corus Group*, 352 F.3d at 1359-1360. Second, were the court to accept defendants' reasoning, it would be holding, in the particular posture of this case, that decisions by the President to deny import relief pursuant to authority delegated by Congress in Section 421 are entirely outside the scope of judicial review under 28 U.S.C § 1581(i). Such a holding, which would go beyond the holding in *Corus Group*, cannot be reconciled with the express language of § 1581(i). These two points are discussed below.

In *Corus Group*, the Court of Appeals for the Federal Circuit concluded that the Court of International Trade should have dismissed the President from an action brought under 28 U.S.C. § 1581(i) challenging certain decisions made during an "escape clause" proceeding affecting steel imports that was conducted under section 201 of the Trade Act of 1974. The Court of Appeals reasoned that § 1581(i) does not authorize proceedings directly against the President, observing that it "refers only to actions 'against the United States, its agencies, or its officers' and does not specifically include the President." 352 F.3d at 1359. The Court of Appeals in *Corus Group* held that the Court of International Trade nevertheless had jurisdiction over the subject matter of the dispute under 28 U.S.C. § 1581(i) and concluded that relief still could have been sought against the Commissioner of Customs, who along with the President and the U.S. International Trade Commission was named as a defendant. The Court of Appeals observed that had plaintiffs prevailed, the Customs Commissioner could have been enjoined from collecting duties, as proclaimed by the President under the escape clause, on the imported tin mill steel products that were at issue in the case. *Id*.

In *Humane Society of the United States v. Clinton*, as in *Corus Group*, plaintiffs sought relief against, and named as defendants, the President of the United States and other government officials (in that case, the Secretaries of State and Commerce). The plaintiffs in *Humane Society* sued the government officials for their alleged failure to comply with the Driftnet Fishing Act, 16 U.S.C. §§ 1826-1826g. *See Humane Society*, 236 F.3d at 1323. Specifically, plaintiffs appealed from a decision of this Court refusing to issue a writ of mandamus ordering the President to impose sanctions on Italy for large-scale driftnet fishing and refusing to find arbitrary and capricious a certification by the Secretary of Commerce that large-scale driftnet

fishing during a specified time period had been terminated by Italy. *See id.* Plaintiffs had brought their case in this Court under 28 U.S.C. § 1581(i).

The defendants in *Humane Society* sought dismissal on the ground that "there has been no waiver of sovereign immunity by the United States." 236 F.3d at 1325. The Court of Appeals for the Federal Circuit, observing that "[s]overeign immunity and subject matter jurisdiction are related but different juridical concepts," *id.* at 1326, further observed that "[u]nless the grant of jurisdiction carries with it a coextensive waiver of sovereign immunity, the Congressional grant would be a hollow act, with no significant consequences to the sovereign, and no significant benefits to the sovereign's subjects." *Id*. at 1328. Analogizing to the Supreme Court's analysis of jurisdiction and waiver of sovereign immunity under the Tucker Act in *United States v. Mitchell*, 463 U.S. 206 (1983), the Federal Circuit concluded in *Humane Society* that 28 U.S.C. § 1581 "not only states the jurisdictional grant to the Court of International Trade, but also provides a waiver of sovereign immunity over the specified class of cases." 236 F.3d at 1328. The Court of Appeals further concluded in *Humane Society* that "[t]he Court of International Trade properly exercised jurisdiction over this case." *Id.*

With respect to the scope of the jurisdictional grant in 28 U.S.C. § 1581(i), the decision of the Court of Appeals in *Humane Society* was consistent with a line of previous decisions in which challenges to presidential action pursuant to tariff statutes were brought thereunder. In its opinion in *Humane Society*, the Court of Appeals noted with approval the plaintiffs' citation of "numerous cases in which the Court of International Trade has since considered challenges to the actions of the President pursuant to the grant of jurisdiction in § 1581(i). *See, e.g., Florsheim Shoe Co. v. United States*, 744 F.2d 787 (Fed. Cir. 1984); *United States Cane Sugar Refiners'*

*Ass'n v. Block*, 69 C.C.P.A. 172, 683 F.2d 399 (1982); *Kemet Electronics Corp. v. Barshefsky*, 976 F. Supp. 1012 (CIT 1997); *Luggage & Leather Goods Mfrs. of America, Inc. v. United States*, 588 F. Supp. 1413 (CIT 1984)." 236 F.3d at 1327. This court cannot adopt the interpretation of *Corus Group* advanced by defendants and, at the same time, adhere to the jurisdictional principles set forth in *Humane Society* and the predecessor cases in which presidential actions were challenged pursuant to 28 U.S.C. § 1581(i). Nor is this court able to reconcile the construction of § 1581(i) advanced by defendants with the plain meaning of that statutory provision.

As noted above, *Corus Group* did not overturn *Humane Society*. *See Corus Group*, 352 F.3d at 1359-1360. Furthermore, it did not overturn the previous cases identified in *Humane Society* as "numerous cases in which the Court of International Trade has since considered challenges to the actions of the President pursuant to the grant of jurisdiction in § 1581(i)." *Humane Society*, 236 F.3d at 1327. Moreover, under precedent of the Court of Appeals for the Federal Circuit, these earlier decisions may be overturned only *en banc*. *See Sacco v. Dep't of Justice*, 317 F.3d 1384, 1386 (Fed. Cir. 2003) (*citing Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("A panel of this court is bound by prior precedential decisions unless and until overturned *en banc*.")). To the extent of any conflict between the decision in *Corus Group* and the decision in *Humane Society*, this court concludes that it should follow the earlier decision, because a decision of one panel of the Court of Appeals for the Federal Circuit should not be read to overturn the decision of a previous panel. "Where there is a direct conflict, the precedential decision is the first." *Newell Companies, Inc.,* 864 F.2d at 765 (Fed. Cir. 1988).

The second part of defendants' argument on jurisdiction is that the recommendation of the U.S. Trade Representative in the administrative proceeding was purely advisory, rather than determinative of legal rights, and hence is unreviewable under principles announced by the Supreme Court in *Bennett v. Spear*, 520 U.S. at 177-78, and cited by the Federal Circuit in *Corus Group*. Having contended that this court lacks subject matter jurisdiction over an action brought directly against the President and that the Trade Representative's action cannot be challenged, defendants present what is in effect an argument that this Court lacks subject matter jurisdiction because there is no officer of the United States against whom relief may be sought. The court finds this argument unpersuasive.

As confirmed by the jurisdictional analyses in *Humane Society* and in prior decisions involving challenges to presidential action under trade statutes, 28 U.S.C. § 1581(i) provides subject matter jurisdiction in this Court over a challenge such as this to final presidential action taken under Section 421. Accordingly, the court need not reach the issue whether the Trade Representative's recommendation to the President, standing by itself, would have been appealable in this forum as a final decision, or, alternatively, "purely advisory" under principles advanced in *Bennett v. Spear*. *See Bennett v. Spear*, 520 U.S. at 178. The procedural actions taken by the Office of the U.S. Trade Representative are challenged in this proceeding. They are reviewable pursuant to the subject matter jurisdiction of this Court as procedural predicates to the final presidential action. *See Dalton v. Specter*, 511 U.S. 462, 478 (1994) (Blackmun, J., concurring in part and concurring in the judgment); *see also Fed. Trade Comm'n v. Standard Oil of Calif.*, 449 U.S. 232, 244-245 (1980) (Preliminary decision to issue complaint by Federal Trade Commission is not insulated by finality requirement, and "a court of appeals reviewing a

[final] cease-and-desist order has the power to review alleged unlawfulness in the [preliminary] issuance of the complaint.").

Furthermore, were this court to accept the two premises of defendants' jurisdictional argument, subject matter jurisdiction would be found to exist in this Court where a challenge is brought to a presidential decision granting import relief under Section 421 but not where the challenge is brought against a presidential decision denying such relief. Where the action challenged is one in which the President granted import relief, the Commissioner of Customs could be enjoined from collecting duties or from excluding merchandise from entry. Where, as here, the President denied such relief, defendants' construction of § 1581(i) would leave no officer of the United States who could be sued. Support for such an anomalous distinction can be found neither in the language of 28 U.S.C. §1581(i) nor in the congressional purpose underlying this jurisdictional provision. The jurisdictional bifurcation that would be created by defendants' interpretation of §1581(i) would appear to blur the distinctions between subject matter jurisdiction and personal jurisdiction. It also would lead to confusion of the type Congress intended to prevent when it included 28 U.S.C. § 1581(i) as part of the Customs Courts Act of 1980, Pub. L. 96-417. As the Court of Appeals for the Federal Circuit observed in *American Association of Exporters and Importers–Textile and Apparel Group v. United States*, 751 F.2d 1239, 1245-46 (Fed. Cir. 1985), that intent was "to establish clear rules and to center international trade litigation in the CIT."

For the foregoing reasons, this court rejects the interpretations of § 1581(i) and of *Corus Group* that are advanced by defendants. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

### B. Summary Judgment and Judgment on an Agency Record

In seeking dismissal of this action, defendants have moved for judgment on an agency record pursuant to USCIT Rule 56.1, "Judgment Upon an Agency Record for an Action Other Than That Described in 28 U.S.C. § 1581(c)." Subsection (a) of that Rule provides, in pertinent part, that "where a party believes that the determination of the court is to be made solely upon the basis of the record made before an agency, that party may move for judgment in its favor upon all or any part of the agency determination." In this action, however, the determination of the court cannot be made solely on the basis of the record made before an agency, because the decision under review is that of the President, not that of an administrative agency. For the same reason, this case cannot be decided on the basis of judgment "upon all or any part of the agency determination." Therefore, the subject matter of Rule 56.1 does not precisely describe the issue pending before the court.

This case presents no genuine issue as to any material fact. Both plaintiff and defendants are seeking judgment as a matter of law. Specifically, plaintiff Motion Systems seeks an order granting it judgment on the record setting aside the President's determination not to grant relief from imports. Defendants and defendant-intervenor CCL Industrial Motor Ltd. seek judgment as a matter of law dismissing this action. These circumstances are within the ambit of Rule 56, Summary Judgment.[5] Accordingly, the court will consider defendants' motion as a motion for

---

[5] USCIT R. 56(c) states, in the relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

summary judgment under USCIT Rule 56 and, similarly, treat the submission of plaintiff opposing defendants' motion as a cross motion for summary judgment.[6]

### C.  Standard of Review for Presidential Actions under Trade Statutes

In reviewing final actions of the President, courts have applied a standard of review considerably narrower and more deferential than the standards most often accorded to final actions by administrative agencies, which Congress has subjected generally to standards of review prescribed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  The APA provisions include the standard of review commonly referred to as the "arbitrary and capricious" or "abuse of discretion" standard, under which a court will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

For cases brought under 28 U.S.C. § 1581(i), 28 U.S.C. § 2640 refers this court to the APA, providing that the court "shall review the matter as provided in section 706 of title 5." However, 5 U.S.C. § 706 is expressly confined to the review of an "agency action."  As the Supreme Court recognized in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), "the President is not an agency within the meaning of the Act," concluding in that instance that "there is no final

---

[6] At oral argument held October 22, 2003, the parties indicated that they do not oppose the court's consideration of the relief sought by defendants and plaintiff as a motion and cross motion, respectively, for summary judgment under Rule 56. *Oral Arg. Tr.* at 64 - 66. Subsequent to oral argument, plaintiff filed with the court a letter, dated November 18, 2003, stating that plaintiff now considered summary judgment to be inappropriate and seeking to "withdraw any concession that consideration under Rule 56 is in order."  In its opposition to defendants' motion under Rule 56.1, plaintiff had acknowledged that "[t]here are no material issues of fact in issue in this action" and sought judgment on the record in its favor.  Plaintiff has not sought to amend its pleadings.  Most significantly, plaintiff's letter of November 18, 2003 does not establish that this case presents a genuine issue as to any material fact.  Under these circumstances, Rule 56 is the applicable rule under which this case is to be decided.

agency action that may be reviewed under the APA standards." *Id.* at 796. The *Franklin* Court

reasoned as follows:

> The President is not explicitly excluded from the APA's purview, but he is not explicitly included, either. Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA. We would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion.

505 U.S. at 800-801. "Although the President's actions may still be reviewed for

constitutionality, we hold that they are not reviewable for abuse of discretion under the

APA . . . ." *Id.* at 801 (citations omitted).

*Franklin v. Massachusetts* involved a judicial challenge to presidential action under the

statutory congressional reapportionment provisions. When reviewing presidential actions taken

under the authority of tariff statutes, courts also have limited the scope of their reviews, noting in

particular the relationship between actions taken under tariff statutes and the President's unique

role in foreign affairs. In *Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985), the

Court of Appeals for the Federal Circuit stated as follows:

> In international trade controversies of this highly discretionary kind–involving the President and foreign affairs–this court and its predecessors have often reiterated the very limited role of reviewing courts. *See, e.g., American Association of Exporters and Importers v. United States,* 751 F.2d 1239, 1248-49 (Fed. Cir. 1984)*; Florsheim Shoe Co. v. United States*, 744 F.2d 787, 793 795-97 (Fed. Cir. 1984)*.* For a court to interpose, there has to be a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority.

762 F.2d at 89. *Maple Leaf Fish Co.* involved the review of presidential action under the "escape clause" established by section 201 of the Trade Act of 1974, 19 U.S.C. §§ 2251-53. In *Florsheim Shoe Co.,* the Federal Circuit applied essentially the same standard of review in considering a challenge to the President's exercise of authority under the Generalized System of Preferences ("GSP") program (specifically, Section 504 of Title V of the Trade Act of 1974, 19 U.S.C. § 2464) to limit duty-free tariff treatment for a certain class of imported goods. The Federal Circuit in *Florsheim Shoe Co.* concluded that "[b]oth the Supreme Court and Court of Customs and Patent Appeals precedent have established that the Executive's decisions in the sphere of international trade are reviewable only to determine whether the President's action falls within his delegated authority, whether the statutory language has been properly construed, and whether the President's action conforms with the relevant procedural requirements." *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 795 (1984). The court further concluded that "[t]he President's findings of fact and the motivations for his action are not subject to review." *Id.* (citing *United States v. George S. Bush & Co.*, 310 U.S. 371, 379-80 (1940); *United States Cane Sugar Refiners' Association v. Block*, 683 F.2d at 404; *Aimcee Wholesale Corp. v. United States*, 468 F.2d 202, 206 (CCPA 1972)).

As do the trade enactments at issue in *Maple Leaf Fish Co.*, *supra*, and *Florsheim Shoe Co.*, *supra*, Section 421 grants the President considerable discretion. The President may decide to provide import relief to the domestic industry, or, after making certain findings, may decide not to do so. If he decides to provide such relief, he may do so by means of "increased duties or other import restrictions." Section 421(a), 19 U.S.C. § 2451(a). The time period for the relief is

also left to the President's discretion; the relief is to remain in effect "for such period as the President considers necessary to prevent or remedy the market disruption." *Id.*

Section 421 does not indicate congressional intent to subject the President's determinations thereunder to an APA "abuse of discretion" or similar standard. Therefore, in reviewing the President's determination of January 17, 2003 not to proclaim restrictive measures on imports of pedestal actuators from China, this court will uphold the President's action absent "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Maple Leaf Fish Co.*, 762 F.2d at 89.

D. Analysis of the President's Decision under the Applicable Standard of Review

1. Construction of the Governing Statute and Action Within Delegated Authority

This court finds no basis to conclude that the January 17, 2003 decision not to grant import relief to the U.S. pedestal actuator industry is based on a misconstruction of Section 421. The decision is consistent with the statute with respect to the types of factual determinations that are required to support a denial of import relief to a domestic industry and with respect to the requirement that the published decision include the "reasons therefor." Moreover, because it contains a specific determination and a specific finding responsive to the statutory criteria for denying relief and presents reasons that are sufficient under the applicable standard for judicial review, the President's decision did not exceed the authority delegated by Congress in Section 421.

The aforementioned statutory criteria are set forth in Section 421(k). Section 421(k)(1) requires that a decision denying import relief be based on a presidential determination that provision of relief is "not in the national economic interest of the United States, or, in

extraordinary cases, that the taking of action pursuant to subsection (a) of this section would cause serious harm to the national security of the United States."  19 U.S.C. § 2451(k)(1).  If the President decides to deny relief under the "economic interest" criterion as opposed to the "national security" criterion, the President may do so only upon a presidential finding under Section 421(k)(2) that "the taking of such action would have an adverse impact on the United States economy clearly greater than the benefits of such action."  19 U.S.C. § 2451(k)(2).

The President's January 17, 2003 decision contains a presidential determination under the economic interest criterion:  "After considering all relevant aspects of the investigation, I have determined that providing import relief for the U.S. pedestal actuator industry is not in the national economic interest of the United States."  The decision also contains a presidential finding that "the import relief would have an adverse impact on the United States economy clearly greater than the benefits of such action."  Finally, with respect to the President's decision to deny relief, the notice states "reasons therefor."

This court's consideration of the reasons stated in the presidential decision must be informed by the degree of deference to be accorded to the President under the applicable standard of review.  As discussed previously, "[t]he President's findings of fact and the motivations for his action are not subject to review."  *Florsheim Shoe Co. v. United States,* 744 F.2d at 795.  Although the President must state reasons for his decision, those reasons are not to be reviewed in this court under the "abuse of discretion" standard of 5 U.S.C. § 706(2)(A), nor are the underlying findings of fact to be subjected to a standard such as the "substantial evidence" standard described in 5 U.S.C. § 706(2)(E).

The reasons set forth in the President's notice refer to factual matters that were before the President as a result of the investigation conducted by the USITC. They relate specifically to the statutory "economic interest" criterion and the statutory requirement that denial of relief under that criterion be based on a presidential finding that "the taking of such action would have an adverse impact on the United States economy clearly greater than the benefits of such action." As a result, they are directed to the specific determination and finding which, under the plain meaning of Section 421(k), must guide the exercise of presidential discretion to deny relief. Having made both the "economic interest" determination required by subsection (k)(1) and the finding under subsection (k)(2) that imposing import relief would have an adverse impact on the United States economy clearly greater than the benefits of such action, and having presented reasons for his decision in the published notice that are sufficient under the applicable standard for judicial review, the President was acting within the boundaries of the discretion Congress delegated to him in deciding not to impose import relief for the domestic pedestal actuator industry.

Motion Systems contends that the President, in denying import relief following the affirmative determination of market disruption by the USITC, both misconstrued Section 421 and exceeded his authority thereunder. Once the USITC has made such a determination, plaintiff argues, the President "is acting under a mandate to provide relief," unless the President invokes what plaintiff views "is meant to be a rare exception to that relief." *Pl.'s Br. in Supp. of its Opp. to Defs.' Mot. for Summ. J. upon an Agency R.* ("*Pl.'s Br.*") at 28. In plaintiff's view, the statute creates a presumption of relief in the use of the words "shall . . . proclaim" in subsection (a) of Section 421, under which the President, following an affirmative USITC determination, "shall, in

accordance with the provisions of this section, proclaim increased duties or other import restrictions." *Pl.'s Br.* at 24. Motion Systems finds further support for its interpretation in the language of subsection (j)(2) of Section 421, which provides that the President, in the absence of an agreement with the People's Republic of China, "shall provide import relief in accordance with subsection (a) of this section." *Id.*

In asserting that the provision in subsection (k)(2) of Section 421 "is meant to be a rare exception" to relief, Motion Systems places emphasis on the words "clearly greater" as used therein ("The President may determine under paragraph (1) that providing import relief is not in the national economic interest of the United States only if the President finds that the taking of such action would have an adverse impact on the United States economy clearly greater than the benefits of such action"). Based on the words "clearly greater" as used in subsection (k)(2), plaintiff construes the statute to require that "[i]n order to support a denial of relief . . . the evidence supporting the denial must be 'clear,' or beyond a reasonable doubt" and that "the burden was on the President to make such a negative determination only where such more-than-substantial evidence was produced." *Pl.'s Br.* at 3. Plaintiff further contends that "[t]he record must contain evidence quantifying the adverse economic impact on the United States economy of providing such relief, not mere conjecture that there might be some adverse impact." *Id.* Regarding benefits of relief, plaintiff argues that "[t]he President has simply not examined or quantified the benefits of relief, and thus the Court cannot sustain his determination that the adverse impact on the United States economy of providing the recommended import relief would be greater than those benefits." *Pl.'s Br.* at 46.

The court does not agree with plaintiff's construction of Section 421. Subsection (k)(2) describes the nature of the presidential finding that must precede a presidential determination that providing import relief is not in the national economic interest. It does not impose on the President a burden to establish or support that finding with "evidence quantifying the adverse economic impact," "evidence beyond a reasonable doubt," "clear and convincing evidence," or "more-than-substantial evidence." The provision itself makes no reference to evidence or burden of proof. Nor does it indicate congressional intent to impose a standard of review different from that which the courts consistently have applied in the judicial review of presidential action under tariff statutes.

The use of the words "shall . . . proclaim" and "shall provide" in subsections (a) and (j)(2) of Section 421, respectively, when read together with subsection (k)(2), do not impose on the President the evidentiary requirements that plaintiff ascribes to these statutory provisions. The words "shall . . . proclaim increased import duties or other restrictions," as used in subsection (a), are expressly qualified with the phrase "in accordance with the provisions of this section," which includes the exceptions provided for in subsections (k)(1) and (k)(2). Similarly, the "shall provide" language of subsection (j)(2) incorporates the same exceptions through the use of the phrase "in accordance with subsection (a) of this section."

A judicial inquiry commensurate with plaintiff's construction of the statute would require this court to evaluate the sufficiency of the evidence underlying the President's findings. That is not within the court's power. Again, "[t]he President's findings of fact and the motivations for his action are not subject to review." *Florsheim Shoe Co.*, 744 F.2d at 795.

Plaintiff relies on a number of cases for its contention that the President's findings should be subjected upon judicial review to a "clear and convincing" evidentiary standard. The cited cases include *Finnigan Corp. v. Int'l Trade Comm'n.*, 180 F.3d 1354, 1366 n.8 (1999) (The applicable standard for determining existence of invalidating activities in a patent case is "clear, satisfactory and beyond a reasonable doubt," which is "indistinguishable from the more modern parlance of 'clear and convincing' evidence."); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (Appellate review of a trial court's findings of fact will be affirmed unless "clearly erroneous."); *Connor v. United States*, 24 CIT 195, 198 (2000) (To establish jurisdiction under 28 U.S.C. § 1581(h) plaintiff must show by clear and convincing evidence that the immediate threat of a harm occurring exists.). The cases cited by plaintiff are unavailing. None establishes a rule of law under which this court, based on the effect of statutory words such as "clearly greater" or any words to similar effect, is to subject presidential findings to a substantial evidence test or a more stringent test requiring "clear and convincing" evidence or evidence "beyond a reasonable doubt."

In summary, the President's decision of January 17, 2003 contains the determination and the finding required by Section 421 to support a denial of import relief and presents "reasons therefor" that are sufficient to support that decision under the applicable standard for judicial review. The court finds no basis to conclude that the President's decision is based on "a clear misconstruction of the governing statute" or that it constituted "action outside delegated authority." *Maple Leaf Fish Co.*, 762 F.2d at 89.

### 2. Compliance with Procedures

The President's decision not to impose import relief for the pedestal actuator industry is subject to review by this court to determine "whether the President's action conforms with the relevant procedural requirements." *Florsheim Shoe Co.,* 744 F.2d at 795. As to review of procedure, the Court of Appeals for the Federal Circuit stated in *Maple Leaf Fish Co.* that "[f]or a court to interpose, there has to be . . . a significant procedural violation." 762 F.2d at 89. The court finds no such violation.

The Section 421 proceeding involved an affirmative finding by the USITC of market disruption and a proposed remedy by the USITC, pursuant to Section 421(g). If the U.S. Trade Representative proposes a measure to prevent or remedy the market disruption found by the USITC to exist, the Trade Representative is required by Section 421(h) to publish notice of that measure in the Federal Register and "of the opportunity, including a public hearing, if requested, for importers, exporters, and other interested parties to submit their views and evidence on the appropriateness of the proposed measure and whether it would be in the public interest." 19 U.S.C. § 2451(h)(1). In this proceeding, the Trade Representative's notice proposes the remedy recommended by the USITC "for further consideration by domestic producers, importers, exporters, and other interested parties, and invites any of these parties to submit their views and evidence on the appropriateness of the proposed remedy and whether it would be in the public interest." *USTR Notice,* 67 Fed. Reg. at 71,008.[7] At the request of Motion Systems, the U.S.

---

[7] The notice also requested public comment "on other possible actions, including: imposition of a quota on imports of pedestal actuators from China, with a quantity and/or duration different from the USITC recommendation; imposition of a tariff-rate quota on imports of pedestal actuators from China; increased duties on imports of pedestal actuators from China; an import monitoring mechanism; or no import relief (pursuant to a determination under

Trade Representative conducted a public hearing, which was held on December 18, 2002.  Thus, the Trade Representative's procedures satisfied the basic procedural requirements of the statute for public notice and comment and for a public hearing.

Motion Systems raises two objections to the Trade Representative's conduct of the hearing.  First, Motion Systems asserts that the hearing procedures were not strict enough to prevent Electric Mobility Corporation from placing on the record "views," rather than "hard evidence," which views Motion Systems asserts would have been exposed as false if subjected to "cross-examination."  *Pl.'s Br.* at 52-53.  Plaintiff contends that the less-than-formal procedures allowed Electric Mobility to place on the record statements indicating that Electric Mobility's switch to a Chinese supplier of actuators had reduced the price of that company's scooters.  In testimony at the Trade Representative's hearing, the president of Electric Mobility, Mr. Michael Flowers, stated that when Electric Mobility switched its sourcing of pedestal actuators from Motion Systems to the Chinese supplier it reduced the price of its Rascal Scooter by over $300.  A.R. Ex. IV at 7-8.  Mr. Flowers followed that statement with the statement that he "believe[d] the import quotas recommended will increase our average sale price by at least $200 next year. . . ."  *Id.* at 8.

Motion Systems, in a post-hearing submission, challenged the credibility of Mr. Flowers's testimony on several points.  A.R. Ex. V, Comment 29.  On the specific issue of price, Motion Systems claimed that Electric Mobility had not reduced its scooter prices after the change to the Chinese supplier.  *Id.*  Motions Systems placed two documents on the record to

---

Section 421(k) of the Trade Act regarding the national economic interest or national security)."  *USTR Notice*, 67 Fed. Reg. at 71,008.

support its claim. The first document is a transcript of a hearing from a different federal court proceeding in which another company official of Electric Mobility, Mr. George Flowers, stated that the company had not sought out a cheaper supplier for the purpose of passing along savings to consumers. *Id.* The second document is an article by an unidentified author that is described as having appeared on the website www.geocities.com/stuportner/files/news.htm with the headline "Electric Mobility To No Longer Sell Through Dealers." The article states that "by going direct, Electric Mobility can sell its popular Rascal scooter for $4,000 -$5,000, compared to the roughly $2,900 dealers sell them for, sources say." *Id.* Motion Systems, before this court, claims that by allowing Mr. Flowers to place on the record "unsubstantiated" testimony, not based on "hard evidence" and contradicted by documents on the record, the process allowed incorrect statements on the record, without which the President's findings cannot be affirmed. Motion Systems reasons that Electric Mobility's alleged failure to lower the price in the absence of import quotas undermines the contention that imposing import quotas will result in increased prices.

The second procedural violation plaintiff claims is that the advance "notice" Electric Mobility gave of its intended presentation at the hearing was misleading. The Federal Register notice of the hearing had requested that parties intending to appear provide "a brief summary of the comments to be presented." *USTR Notice*, 67 Fed. Reg. at 71,008. Electric Mobility filed a letter stating that its president, Michael Flowers, would testify. It summarized Mr. Flowers's comments as follows:

> Mr. Flowers will testify that Electric Mobility is the only purchaser
> of the actuators at issue, and that, no matter what remedy is
> imposed, Electric Mobility will not resume purchases from Motion
> Systems. He will also testify that the imposition of import
> restrictions would harm the domestic economy and cause
> additional burdens to the elderly and mobility-impaired.

A.R. Ex. III, Patton Boggs letter, Dec. 11, 2002. Motion Systems claims that Mr. Flowers's

discussion at the hearing of the probability of increased prices for mobility scooters if the

proposed import relief were granted was outside the scope of the summary and, therefore,

improperly before the U.S. Trade Representative. *See Pl.'s Br.* at 54-55.

Plaintiff's first procedural objection is not a sufficient basis upon which this court may

overturn or otherwise disturb the presidential decision. The Trade Representative's procedures

afforded interested parties the opportunity to be heard in the precise manner required by

Section 421(h). Although Motion Systems may have desired a more trial-like hearing with

sworn testimony and cross-examination, nothing in the statute required such procedures.

So long as it satisfies the specific statutory requirements and adheres to "fundamentals of

fair play," an agency has considerable latitude over its method of inquiry. *FCC v. Pottsville*

*Broad. Co.*, 309 U.S. 134, 143-144 (1940). The Supreme Court has expressed this principle as

follows:

> But this much is absolutely clear. Absent constitutional constraints
> or extremely compelling circumstances the "administrative
> agencies 'should be free to fashion their own rules of procedure
> and to pursue methods of inquiry capable of permitting them to
> discharge their multitudinous duties.'"

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 543-544

(1978) (quoting *FCC v. Schreiber*, 381 U.S. 280, 290 (1965), in turn quoting from *FCC v.*

*Pottsville Broad. Co.*, 309 U.S. at 143). In this case, the Trade Representative's procedures allowed witnesses to make extensive statements at a public hearing and allowed participating parties to submit supporting material. The President was free to consider the statements submitted, weigh their credibility, and ignore irrelevant submissions. Motion Systems was afforded the opportunity in a post-hearing submission to respond to the entire case made by the importer, the Chinese manufacturer, and the Chinese government. Its objections to the placing of the "views" of Electric Mobility on the record and to its lack of an opportunity to cross-examine Electric Mobility's witness do not establish, in the words of the opinion in *Maple Leaf Fish Co.*, a "significant procedural violation." 762 F.2d at 89.

Plaintiff's second claimed procedural error, that the "notice" given by Electric Mobility with regard to its presentation at the Trade Representative's hearing was misleading, also fails to suffice as a basis to invalidate the President's decision. Electric Mobility's pre-hearing summary indicated that Mr. Flowers would discuss harm to the domestic economy and "additional burdens" to consumers of the downstream products. Prices for the downstream products are among the subjects relevant to the topic of "additional burdens" referred to in the pre-hearing letter filed by Electric Mobility. In addition, Motion Systems had the opportunity to make a post-hearing submission to the Trade Representative with the potential to cure the effect of any unfair surprise Motion Systems may have encountered because of the content of Mr. Flowers's testimony. Motion Systems in fact made a post-hearing comment submission in which it contested the validity of Mr. Flowers's statements about the price of the downstream products. A.R. Ex. V, Comment 29. That submission was part of the record available for the President's consideration.

With respect to both of its objections to the Trade Representative's hearing, plaintiff has not established a procedural irregularity that denied it fundamental fairness, nor is it able to show that it was harmed by the procedural errors it alleges. *See Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings.").

### E.  Other Challenges by Motion Systems to the President's Decision

In addition to its challenge to the President's construction of Section 421, its claim that the President exceeded his authority thereunder, and its objections to the Trade Representative's hearing procedure, Motion Systems raises two challenges to the President's decision and decision-making process, which the court summarizes as follows:  (1) the President and the Trade Representative improperly considered "political factors" after the close of the statutory U.S.-China consultation period; and (2) the President was required to reopen the proceeding after the submission of additional evidence by Motion Systems in rebuttal to information submitted by Electric Mobility.

### 1.  The President Is Not Prohibited from Considering "Political Factors."

Plaintiff alleges that the President and the U.S. Trade Representative acted improperly in considering what it terms "political factors" after the conclusion of the period identified by Section 421(j)(1) for consultations with China.  In support of its claim, Motion Systems points to a comment letter submitted to the Trade Representative by the Embassy of the People's Republic of China and testimony at the Trade Representative's hearing by an official of the People's Republic of China, each of which, according to plaintiff, "argued that proceeding under this

provision [*i.e.*, Section 421] threatened 'harm to China-U.S. trade and economic relations.'"
*Pl.'s Br.* at 50-51, 51 n.34.

Plaintiff submits that consideration of such "political factors" was improper after the consultation period and that the President was then required to confine his consideration to "economic factors." Under Section 421(j)(1), "[t]he Trade Representative is authorized to enter into agreements for the People's Republic of China to take such action as necessary to prevent or remedy market disruption, and should seek to conclude such agreements before the expiration of the 60-day consultation period" provided for in the Protocol of Accession of the People's Republic of China to the World Trade Organization. If no agreement is reached, or if the President "determines tha[t] an agreement reached . . . is not preventing or remedying the market disruption," then the President is directed to provide import relief in accordance with subsection (a) of Section 421. 19 U.S.C. § 2451(j)(2). Motion Systems argues that, subsequent to the consultation period, "[t]hreats of retaliation by China for application of the provisions of the law whose enactment it agreed to as a condition of support for Chinese accession to the WTO were improperly entertained and considered by USTR and the President." *Pl.'s Br.* at 50-51.

The court finds no merit in plaintiff's argument regarding "political factors." Neither the record before the court nor the text of the President's decision establishes that trade relations between the United States and China were a factor in the President's decision. Regardless, the court finds nothing in Section 421 that would have prohibited the President from considering a wide range of factors, including an effect on trade relations between the United States and China, in determining whether there would be an adverse impact on the U.S. economy clearly greater than the benefits of granting relief. Nor does the court perceive any violation of Section 421 in

the actions of the Trade Representative that included the Embassy letter in the record and that allowed the testimony of the official of the People's Republic of China. In enacting Section 421, Congress gave no indication of an intent to interfere with the Executive Branch function of communicating with foreign governments.

### 2. The President Was Not Required to Reopen the Proceedings.

Motion Systems argues that "[w]here, as here, the President's decision is based on testimony that is itself erroneous . . . there is an obligation to re-consider that decision in light of the new information that has come to light," adding that "[o]therwise, the integrity of a section 421 proceeding, including in particular the President's decision on remedy, is compromised and justice is denied." *Pl.'s Br.* at 60. In its post-decision submission, plaintiff cited as the "new information" price lists from the Department of Veteran Affairs for Electric Mobility's scooters indicating that Electric Mobility did not decrease the prices of its downstream mobility scooters after it switched to the Chinese pedestal actuator supplier and that Electric Mobility did not make the "seat lift" standard equipment on 70 percent of its scooters. Plaintiff contends that these price lists establish that the testimony by Electric Mobility's president at the hearing conducted by the office of the U.S. Trade Representative was incorrect or misleading.

The matter raised in plaintiff's post-decision submission does not suffice as a basis upon which this court may compel the President or the Trade Representative to reopen the proceedings for reconsideration of the President's final decision. Plaintiff correctly observes that administrative bodies have the authority to reconsider their decisions based on a showing of perjury or fraud. *See Pl.'s Br.* at 58 (citing *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*, 650

F.2d 9 (2d Cir. 1981)); *see also Elkem Metals Co. v. United States*, 26 CIT ___, ___, 193

F. Supp. 2d 1314, 1320 (2002).  However, the decision to reconsider is one left to the agency in

question.  A court will not disturb the decision of the agency not to reconsider, except upon a

showing of abuse of discretion.  *See United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S.

515, 535 (1946).  Even more deference likely would be due a decision not to reconsider a final

action taken by the President.

Plaintiff has not made a showing that the President or the Trade Representative

committed an abuse of discretion following issuance of the final presidential decision.  In its

post-decision submission, Motion Systems addressed a general subject that the party already had

addressed in its post-hearing submission and that was not pivotal to the reasons underlying the

President's decision as stated by the President in the Federal Register notice of January 22, 2003.

Accordingly, the "new information" offered in the post-decision submission does not establish

that the President's final decision was, as plaintiff alleges, "*based on* testimony that is itself

erroneous."  (Emphasis added).  Nor does it present facts that would compel the President, in the

exercise of his overall discretion as granted by Congress in Section 421, to reach a different

decision.

The Assistant Trade Representative's letter following plaintiff's post-decision submission

responded that the issue raised in that submission was neither novel nor determinative in the

proceedings.  The letter stated that "[t]he issue of whether Electric Mobility reduced its price

after purchasing Chinese pedestal actuators was clearly reflected in [the materials submitted prior

to the decision] as disputed between the parties."  The letter concludes that the "issue relates only

indirectly to the considerations identified by the President as dispositive in his decision."

For these reasons, the matters raised in plaintiff's post-decision submission are insufficient to form the basis upon which this court may compel a reopening of the administrative proceedings.

### III. CONCLUSION

For the foregoing reasons, the court concludes that it has subject matter jurisdiction of this case under 28 U.S.C. § 1581(i) and that the President's decision denying import relief to the pedestal actuator industry did not misconstrue the governing statute and did not exceed the authority delegated to the President thereunder. The court finds no basis to overturn that decision on procedural grounds or to order the President or the U.S. Trade Representative to reopen the administrative proceedings. Summary judgment is granted for defendants and will be entered accordingly.


Dated: June 3, 2004                              /s/ Timothy C. Stanceu
New York, New York                         Timothy C. Stanceu
                                                         Judge