566 F.2d 396
 1 ITRD 1647
 SNEAKER CIRCUS, INC., Blazer Sports International, Inc. and
Bob Wolfe Associates, Inc., Plaintiffs-Appellants,
v.
Jimmy CARTER, President of the United States, Robert S.
Strauss, Special Representative for Trade Negotiations,
Stephen J. Lande, Deputy Special Representative for Trade
Negotiations, and United States International Trade
Commission, Defendants-Appellees.
 No. 75, Docket 77-6092.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1977.
Decided Nov. 10, 1977.
 
 Vito R. Vincenti, New York City (Vincenti & Schickler, New York City, Jonathan S. Gaynin, Kenneth M. Weinman and Robert F. Moraco, New York City, of counsel), for plaintiffs-appellants.
 Joan M. Dolan, Asst. U. S. Atty., Brooklyn, N.Y. (David G. Trager, U. S. Atty. for the Eastern District of New York, Bernard J. Fried, Asst. U. S. Atty., Brooklyn, N.Y., of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, SMITH and ANDERSON, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered in the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, which denied injunctive relief and dismissed the complaint for want of subject matter jurisdiction. Appellants Sneaker Circus, et al., retailers, wholesalers and importers of footwear, sought injunctive and declaratory relief to invalidate certain U.S. trade agreements with the Republic of Korea and the Republic of China,[1] which were negotiated pursuant to the Trade Act of 1974, 19 U.S.C. §§ 2101 et seq. We find error in the determination of lack of subject matter jurisdiction and reverse and remand.
 
 I.
 
 2
 The Trade Act of 1974 is designed to encourage "open and nondiscriminatory world trade" by providing, inter alia, procedures for safeguarding American industry and labor against injurious import competition. The Act authorizes the President to negotiate orderly marketing agreements with foreign countries after reviewing recommendations prepared by the International Trade Commission.
 
 
 3
 The agreements in question limit the quantity of footwear exported from the Republic of Korea and the Republic of China to the United States during a four-year period, and are enforced by sanctions imposed by the foreign governments. The role of the U.S. Customs Service, under the terms of the agreement, is to count footwear arriving in this county to determine that quantities do not exceed the terms of the agreement, and to check goods for valid export visas.
 
 
 4
 In its complaint, Sneaker Circus asserts that these trade agreements are invalid, because they were not negotiated in conformity with the procedural requirements of the Act. It is further alleged that the failure to hold statutorily required public hearings represents a violation of the appellants' due process rights under the United States Constitution.[2]
 
 
 5
 The District Court did not reach the question of whether the trade agreements were concluded in conformity with statutory and constitutional requirements, nor do we. The question at issue is, rather, which federal court, if any, is the appropriate forum for the determination of the validity of the Trade Agreements. Sneaker Circus argues that the case raises federal questions which require the interpretation of the fifth amendment to the United States Constitution and the Trade Act of 1974; that it is barred, by the terms of the agreements, from litigating these issues in the U.S. Customs Court; and that consequently the District Court has jurisdiction of the matter, pursuant to 28 U.S.C. §§ 1331, 1337 and the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.
 
 
 6
 Appellees, U.S. Government officials, argue to the contrary that 28 U.S.C. § 1582(a), as amended, assigns the Customs Court exclusive subject matter jurisdiction over this case.
 
 
 7
 As we noted in our opinion in J. C. Penney Co. v. U.S. Treasury Department, 439 F.2d 63 (2d Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971), it is the general rule that disputes which concern the customs laws of the United States, and which arise under the Tariff Act of 1930, as amended, may be adjudicated only in the Customs Court pursuant to the grant of exclusive jurisdiction in 28 U.S.C. § 1582(a). This is the case even when those disputes are largely constitutional in nature, and even when they have not yet "ripened" sufficiently to permit immediate adjudication as justiciable "cases or controversies."[3] This rule is supported both by sound considerations of policy and by consistent historical precedent.[4]
 
 
 8
 In Patchogue-Plymouth Mills Corp. v. Durning, 101 F.2d 41 (2d Cir. 1939), and in David L. Moss Co. v. United States, 103 F.2d 395 (Cust. & Pat.App.1939), the courts indicated that jurisdictional exclusivity was a necessary condition of the uniform and consistent application of the customs laws.
 
 
 9
 There is, however, an exceptional class of cases which, while arising under the Tariff Act of 1930, is for practical or jurisprudential reasons, barred from the Customs Court by statute. In these cases, and in these cases alone, jurisdiction is vested in the District Courts by virtue of 28 U.S.C. §§ 1331 and 1337.[5] While this exceptional category must be narrowly construed so as not to defeat the policy justifications of the general rule, it is, nevertheless, well-grounded in federal practice and precedent. See Timken Co. v. Simon, 176 U.S.App.D.C. 219 at 224, 539 F.2d 221 at 226 n. 7 (1976).
 
 
 10
 The case at bar is among these exceptions to the exclusive jurisdiction of the Customs Court.
 
 
 11
 28 U.S.C. § 1582, which delineates the jurisdiction of the Customs Court, reads in pertinent part:
 
 
 12
 (a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930 as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: . . . (4) the exclusion of merchandise from entry or delivery under any provisions of the customs laws . . . .
 
 
 13
 (c) The Customs Court shall not have jurisdiction of an action unless (1) either a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended, and denied in accordance with the provisions of section 515 of the Tariff Act of 1930, as amended, or if the action relates to a decision under section 516 of the Tariff Act of 1930, as amended, all remedies prescribed therein have been exhausted . . . .
 
 
 14
 Under the terms of the Act, Customs Court jurisdiction is invoked only when an individual protests a specific administrative ruling made at a United States port of entry, and when that protest has been denied.
 
 
 15
 In the present case, the trade agreements regulate export from a foreign nation. Violation of these export limits subjects the foreign exporter to heavy civil and criminal sanctions in the country of export.[6] There is accordingly every likelihood that the agreements will be effectively enforced abroad, with the result that no occasion for protest under section 514 will ever present itself, and no Customs Court jurisdiction under 28 U.S.C. § 1582 will arise. The point is not that the dispute is not presently ripe for adjudication in the Customs Court, but rather that the case will never ripen sufficiently to meet the statutory requirements for jurisdiction. When this situation occurs, jurisdiction over a customs matter which presumptively inheres in the Customs Court reverts to the District Court under 28 U.S.C. §§ 1331 and 1337.[7]
 
 
 16
 Our decision today is consistent with two recent cases decided in the Court of Appeals for the District of Columbia. In Timken Co. v. Simon, supra, 176 U.S.App.D.C. 219, 539 F.2d 221, decided under the Anti-Dumping Act, 19 U.S.C. §§ 160 et seq., the court found that because goods had entered the country prior to the effective date of the Act, and because the Act functions prospectively, there could in principle be no opportunity for protest under the terms of section 516, and thus no effective access to the Customs Court. In this special circumstance, the court noted: "Since Timken has no remedy pursuant to section 516 in the Customs Court, we decline to hold that the District Court lacked jurisdiction over this action." 176 U.S.App.D.C. 219 at 224, 539 F.2d 221 at 226 n. 7.
 
 
 17
 Similarly, in Consumers Union of United States, Inc. v. Kissinger, 165 U.S.App.D.C. 75, 506 F.2d 136, cert. denied, 421 U.S. 1004, 95 S.Ct. 2406, 44 L.Ed.2d 673 (1974), import restraints were voluntarily accepted by private companies, and enforced abroad. Thus there could never, in principle, have been a Customs Service decision which could be protested under section 514. Accordingly, the Customs Court lacked jurisdiction under 28 U.S.C. § 1582, and jurisdiction was accepted by the District Court.[8]
 
 
 18
 The government asserts that as a factual matter appellants will be able to protest the actions of customs officials on at least three types of occasions, and so come within Customs Court jurisdiction: (1) They can order goods without first obtaining a visa, and protest the refusal by Customs officials to permit entry; (2) They can protest the counting of shipments with visas against the quotas; and (3) They can protest if goods in excess of the quotas are refused entry.[9]
 
 
 19
 The first and third of these supposed occasions, however, require that foreign exporters risk substantial liability by violating the trade agreements. And the second occasion is simply not one of the opportunities for protest acknowledged by the statute. In short, the government's effort to fit the present case within the rubric of 28 U.S.C. § 1582 is contrived at best. We cannot condition the adjudication of a case of this type on the subjection of appellants and their trading partners to foreign punishment.[10]
 
 II.
 
 20
 It might be urged that even if the Customs Court lacks jurisdiction of this case, this does not imply that jurisdiction necessarily inheres in the District Court, pursuant to 28 U.S.C. §§ 1331 and 1337. On this view, there may be an implied statutory unreviewability of cases which implicate the customs laws but which fail to meet the requirements of 28 U.S.C. § 1582. Against this we might simply note Justice Brandeis' famous dictum:
 
 
 21
 The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied; and whether the proceeding in which facts were adjudicated was conducted regularly. (St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 84, 56 S.Ct. 720, 740, 80 L.Ed. 1033 (1936))
 
 
 22
 and the presumption of reviewability reflected in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and its progeny.[11]
 
 
 23
 A review of the Act's legislative history gives no indication that Congress wished to withhold judicial review in this area. While the Congress does stress the need for "extensive negotiating authority" vested in the executive, and the importance of legislative oversight of trade agreements, nowhere does it indicate that this oversight is intended to be exclusive. See 1974 U.S.Code Cong. & Admin.News p. 7186.[12]
 
 III.
 
 24
 Finally, our determination that the District Court may assume jurisdiction in this case, all other requirements being met, does not, of course, end discussion of the matter. For to be decided on its merits, a case must not only meet jurisdictional requirements, but must also be justiciable per se. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). That is, it must be the kind of case which provides an appropriate occasion for judicial decision-making.
 
 
 25
 " Justiciability is itself a concept of uncertain meaning and scope." Flast v. Cohen, 392 U.S. 83 at 95, 88 S.Ct. 1942 at 1950, 20 L.Ed.2d 947 (1968). As applied in the instant case, justiciability implicates three main concepts. First, to be justiciable a case must not involve a "political question." Second, plaintiffs must be able to demonstrate that they have standing to bring suit. Third, the case must be "ripe" for adjudication.
 
 
 26
 The Supreme Court has characterized a "political question" in the following terms:
 
 
 27
 Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. (Baker v. Carr, 369 U.S. at 217, 82 S.Ct. at 710 (1962)).
 
 
 28
 Among the matters traditionally recognized as deserving of broad executive and legislative discretion are those which concern the conduct of foreign affairs.
 
 
 29
 The conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative "the political" Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision. (Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918)).
 
 
 30
 This is because, in the language of Baker v. Carr, this area often involves standards which are difficult to formulate and apply, and may demand a "single-voiced statement of the Government's views."
 
 
 31
 Where, as in the instant case, the central issue turns on the formulation and implementation of agreements with foreign powers, it may be thought non-justiciable, because necessarily involving political questions.
 
 
 32
 It is important to recognize, however, that Sneaker Circus does not, in the first instance, challenge the substance of the trade agreements. Were it to do so, we would be unable to consider the case on its merits, for it would then be nonjusticiable in the sense noted above. Sneaker Circus, rather, challenges the procedures employed by the Executive in concluding these agreements, procedures which are mandated by statute, and which accordingly are within the proper supervision of the federal courts. It is by now a commonplace that an agency's violation of its own procedures may constitute a denial of due process, adjudicable in the courts. Accardi v. Shaughnessy,347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).
 
 
 33
 Whether appellants in this case show the requisite standing to bring suit Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); L. Jaffe, Judicial Control of Administrative Action 501-31 (1965); K. C. Davis, Administrative Law Treatise §§ 22.00-22.04, 22.07, 22.11-22.14, 22.19-22.21 (Supp.1970); Jaffe, Standing Again, 84 Harv.L.Rev. 633 (1971) and whether the case is presently "ripe" for adjudication Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); K. C. Davis, Administrative Law Treatise §§ 21.01-21.10; Vining, Direct Judicial Review and the Doctrine of Ripeness in Administrative Law, 69 Mich.L.Rev. (1971) are issues which cannot be determined on the present state of the record. These are, however, threshold questions which must be determined by the District Court before adjudication on the merits can proceed.
 
 
 34
 Reversed and remanded.
 
 
 
 [1]
 42 Fed.Reg. 32440 (1977)
 
 
 [2]
 Appellants also assert that the agreements violate § 1 of the Sherman Act, 15 U.S.C. § 1, as a restraint of foreign and interstate commerce, and that they violate the General Agreement on Tariffs and Trade and the Treaty of Friendship, Commerce, and Navigation entered into between the United States and the Republic of Korea
 
 
 [3]
 439 F.2d at 67-68
 
 
 [4]
 439 F.2d at 66
 
 
 [5]
 We assume, arguendo, that all other statutory requirements have been satisfied
 
 
 [6]
 See, for example, General Export and Import Law of the Republic of Korea, Law No. 1878, as amended (Jan. 16, 1967); Export Inspection Law of the Republic of Korea, Law No. 1164, as amended (Oct. 4, 1962)
 
 
 [7]
 We do not reach the issue of whether jurisdiction may also be predicated on 28 U.S.C. § 1361 or 5 U.S.C. § 702
 
 
 [8]
 The court in Consumers Union did not specifically address this matter
 
 
 [9]
 The government advanced the position at oral argument that the decision to classify goods according to revised tariff categories, established pursuant to the trade agreements, provides a ground for challenging the new classification under 19 U.S.C. § 1514. That section, however, indicates that decisions affecting "the classification and rate and amount of duties chargeable" may be challenged. We infer from the terms of the statute that where, as in the instant case, a reclassification would have no effect on either the rate or amount of duty payable, no opportunity for challenge exists. It follows that there is no access to the Customs Court
 
 
 [10]
 See, for example, the line of cases which holds that production of documents should not normally be ordered if such an order would cause an individual to violate foreign law. Application of Chase Manhattan Bank, 297 F.2d 611, 613 (2d Cir. 1962); Ings v. Ferguson, 282 F.2d 149, 152 (2d Cir. 1960); First National City Bank of New York v. IRS, 271 F.2d 616, 619 (2d Cir. 1959), cert. denied, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960). But compare Arthur Andersen & Co. v. Finesilver, 546 F.2d 338 (10th Cir. 1976), cert. denied sub nom. Arthur Andersen & Co. v. Ohio, et al., 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977)
 
 
 [11]
 See also Dunlop v. Bachowski, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Timken Co. v. Simon, 539 F.2d 221 at 227 (D.C. Cir. 1976)
 
 
 [12]
 And indeed the Congress specifically recognized the legitimacy of Customs Court review of some challenges to presidential actions. 1974 U.S.Code Cong. & Admin.News at p. 7363