MAPLE LEAF FISH CO., Appellant,

v.

The UNITED STATES, Appellee.

Appeal No. 85-534.

United States Court of Appeals, Federal Circuit.

May 8, 1985.

David O. Elliott, Barnes, Richardson & Colburn, New York City, for appellant.

Michael P. Maxwell, Commercial Litigation Branch, Dept. of Justice, New York City, for appellee. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

DAVIS, Circuit Judge.

This "escape clause" case brings to us the narrow question whether frozen mushrooms were properly included in determinations by the International Trade Commission (ITC) and the President in imposing additional duties on "mushrooms, prepared and preserved" provided for in item 144.20 of the Tariff Schedules of the United States (TSUS). The Court of International Trade (Carman, *J.*) ruled that they were so included. *Maple Leaf Fish Co. v. United States*, 596 F.Supp. 1076 (1984). We agree and affirm.

## I.

Sections 2251–53 of Title 19 of the U.S. Code (Sections 201–03 of Title II of the Trade Act of 1974) provide for import relief to a domestic industry injured or threatened by import competition due to increased quantities of competing imports. This is frequently referred to as the "escape clause." S.Rep. 1298, 93d Cong., 2d Sess. 119, [1974] U.S.Code Cong. & Ad. News 7263. The statute provides that in such a case a petition may be filed with the ITC (19 U.S.C. § 2251(a)(1)); that agency must then investigate, with public hearings, whether increased imports injure or threaten to injure a domestic injury producing an article like or directly competitive with the imported article. 19 U.S.C. § 2251(b)(1), (c). The Act lists a number of specific factors to be considered (19 U.S.C. § 2251(b)(2)) but "[t]hose factors are not intended to be exclusive.... [T]he Commission is directed to take into account all economic factors it considers relevant." S.Rep. 1298, 93d Cong. 2d Sess. 121, [1974] U.S.Code Cong. & Ad.News 7265.

After it has finished its investigation the ITC makes a report to the President. 19 U.S.C. § 2251(d). If the Commission finds serious injury or threat thereof it must recommend appropriate import relief and whether adjustment assistance is appropriate.

On receipt of an affirmative report from the ITC the President shall provide import relief "unless he determines that provision of such relief is not in the national economic interest of the United States." 19 U.S.C. § 2252. The President is empowered to grant a number of types of relief, including increased duties, trade restrictions, etc., "or take any combination of such actions." 19 U.S.C. § 2253. Nine factors are specified for the President to consider "in addition to such other considerations as he may deem relevant." 19 U.S.C. § 2252(c).[1]

---

1. There are a number of other statutory limitations, authorizations, and requirements, but for this case the sketch we have given is sufficient.

## II.

In March 1980, the American Mushroom Institute (a trade association representing domestic canners and growers of mushrooms) filed a petition with the ITC under the "escape clause" legislation described in Part I, *supra*. The ITC commenced and pursued an investigation to determine whether mushrooms classifiable under item 144.20 of TSUS as "[m]ushrooms ... [o]therwise prepared or preserved" were being imported in such increased quantities as substantially to cause serious injury or the threat thereof to a like or competing domestic industry.

The ITC's report to the President began with the statement: "On the basis of the information developed in the course of the investigation, the Commission has determined ... that mushrooms, prepared or preserved, provided for in item 144.20 of the Tariff Schedules of the United States (TSUS), are being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof to the domestic industry producing an article like or directly competitive with the imported article." The report then recommended import relief taking the form of quantitative restrictions, or import quotas, for a 3-year period. The President accepted the Commission's determinations but decided to give import relief in the form of increased duties, and so proclaimed in October 1980. As a result, supplemental or cumulative duties were imposed on all mushrooms covered by item 144.20 of the TSUS.

Appellant Maple Leaf Fish Co. (Maple Leaf), a Canadian importer of frozen battered and breaded mushrooms, imported the mushrooms involved in this action and protested Customs' assessment of the increased duties. The protest was denied. Maple Leaf then filed this suit in the CIT in October 1981, challenging the assessment of the supplemental duties so far as such

frozen and battered mushrooms are concerned. Appellant's position is, first, that such mushrooms were not included in the ITC's determinations and report and accordingly were beyond the scope of the President's power to award import relief as to them, and, second, that if those products were intended by the ITC to be covered by its report the investigation, evidence, and findings did not permit their inclusion. The matter came before the CIT on cross-motions for summary judgment.[2] As we have indicated, *supra*, the court rejected both grounds in a comprehensive opinion.

## III.

■ The initial inquiry is whether the ITC report covered frozen mushrooms (like appellant's) or whether it confined itself to canned mushrooms. Judge Carman read the report as including frozen mushrooms, and so do we.

The notice instituting the investigation broadly covered "mushrooms, prepared or preserved (provided for in item 144.20 of the Tariff Schedule of the United States (TSUS)", and the parties agree that appellant's frozen and battered mushrooms fall into that category of "mushrooms, prepared or preserved" and are blanketed by item 144.20. We have already pointed out that the opening paragraph of the ITC report expressly stated that its affirmative determination covered the same broad category. In addition, the first footnote in the joint views of three of the four participating ITC commissioners specifically says that "the subject imports in this case" are the class provided for in item 144.20, and then adds: "While the item includes mushrooms in jars and *frozen mushrooms*, 97 percent of all those imports are in cans. Furthermore, the vast majority of domestic production in these categories is canned as opposed to jarred or *frozen*" (emphasis added). This is a specific recognition of

---

**2.** The "escape clause" statute does not specifically provide for judicial proceedings or for review of the ITC proceedings but the CIT earlier held, rejecting a jurisdictional challenge by the Government, that Maple Leaf could sue under 28 U.S.C. § 1581(a). *Maple Leaf Fish Co. v. United States,* 566 F.Supp. 899 (CIT 1983). In this court there is no challenge to the CIT's jurisdiction.

frozen mushrooms as included within the class covered by the report. Also, as the CIT observed, the views of those three commissioners contain a lengthy discussion of fresh mushrooms (as well as the canned variety) and there is nothing to indicate that, despite what the report literally says, frozen mushrooms were silently excluded in the end from the overall coverage. The heavy emphasis on the canned product is easily explainable as the result of the evident and acknowledged fact that, as the commissioners specifically note, 97 percent of all imports are canned. The upshot is that we are satisfied that the ITC (and therefore the President) intended to include appellant's type of mushrooms in the import relief granted.[3]

## IV.

Maple Leaf then says that, if this is so, the Commission—and therefore the President—violated statutory requirements because there is no adequate finding of injury to the frozen mushroom industry (as distinct from the canned mushroom industry). Appellant makes the argument as if the ITC had gone wildly beyond its own investigation to include frozen mushrooms, without the slightest basis in the record before it. The fact is, however, that a part of the report entitled "Information Obtained in the Investigation" contains a section headed "Dried, frozen and fresh mushrooms," giving in detail the statistics on imports of those particular varieties, including imports from Canada. We therefore have before us an ITC report which followed an investigation that actually included frozen mushrooms, and a report which (as we have held in Part III, *supra* ), covered frozen mushrooms in its final determinations.

The question then is to what extent the courts can review the challenged actions of the Commission and the President in such a case. The critical element is that the area of the "escape clause" legislation undoubtedly involves the President and his close relationship to foreign affairs, our nation's connections with other countries, and the external ramifications of international trade. More than that, Congress has vested the President with very broad discretion and choice as to what he decides to do affirmatively, or even whether he should do anything. *See* Part I, *supra.* Similarly, the ITC has great leeway to consider various factors—including all economic factors it deems relevant—bearing on its final determination "whether an article is being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry producing an article like or directly competitive with the imported article." 19 U.S.C. § 2251(b)(1)-(6). *See* Part I, *supra.*

In international trade controversies of this highly discretionary kind—involving the President and foreign affairs—this court and its predecessors have often reiterated the very limited role of reviewing courts. *See, e.g., American Association of Exporters and Importers v. United States,* 751 F.2d 1239, 1248–49 (Fed.Cir. 1985); *Florsheim Shoe Co. v. United States,* 744 F.2d 787, 793, 795–97 (Fed.Cir. 1984). For a court to interpose, there has to be a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority. On the other hand, "[t]he President's findings of fact and the motivations for his action are not subject to review." *Florsheim, supra,* 744 F.2d at 795. The same is true, we think, of ITC "escape clause" action which is preparatory to, and designed to aid, presidential action. The same factors which have led, in this kind of

---

**3.** There is absolutely no reason to believe that the President failed to accept the Commission's determination to include frozen mushrooms. His Proclamation 4801 of October 29, 1980, stated broadly that the ITC had "determined that mushrooms, prepared or preserved, provided for in item 144.20 of the Tariff Schedules of the United States (TSUS) (19 U.S.C. § 1202) are being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or the threat thereof, to the domestic industry providing an article like or directly competitive with the imported article." There is no suggestion whatever that he departed in any respect from the Commission's all-inclusive determination.

discretionary case, to strict confinement of the court's intervention vis-a-vis the President are equally applicable to the ITC in its "escape clause" functioning. *See Sneaker Circus, Inc. v. Carter,* 566 F.2d 396, 401–02 (2d Cir.1977).

Appellant's submission to us runs counter to those principles. There is at this point no substantial showing of a misreading of the "escape clause" statute, a trenching beyond delegated power, or a significant violation of appellant's procedural rights. Instead, we are told—despite our holding that the ITC and the President did include frozen mushrooms in their final determinations (Part III, *supra*) and despite the fact that this ITC investigation specifically included that kind of mushroom, *see supra*—that nevertheless the Commission could not properly find that the domestic frozen mushroom industry was injured or threatened by the importation of foreign frozen mushrooms. This is said to be so because the commissioners, in other parts of their discussion, considered canning of mushrooms as the domestic industry producing a "like" article,[4] and did not specifically discuss injury to frozen mushrooms. It is plain that this contention asks us, contrary to our precedents, to review the ITC's ultimate factual determination that there *was* injury to domestic frozen mushroom producers. We cannot, however, turn this case into the ordinary administrative review in other areas in which the court looks to see if substantial evidence supports the agency's findings. Nor should we decide whether the Commission had to be more specific as to a class of mushroom importers (bringing in frozen mushrooms) who were responsible for less than 3 percent of all mushroom imports into this country. It is enough for this case that, as we have held, the ITC did in fact make the ultimate finding and determination that there was such injury (or threat). *Cf. Florsheim, supra,* 744 F.2d at 796–797 (sufficient that Executive Order cited a certain statute despite contention that the President was actually acting un-

der another provision with a different underlying theory).

AFFIRMED.

COWEN, Senior Circuit Judge, specially concurring.

While I concur in the court's opinion, I write here to emphasize my agreement with one aspect of the trial judge's opinion which the majority may have implicitly adopted. The Government has argued that in determining whether the International Trade Commission (ITC) misconstrued section 201 or acted outside the scope of its delegated authority, courts need only consider whether the ITC made a *determination* that increased imports of particular items injure or threaten to injure a domestic industry that produces like or directly competitive products. The logical consequence of this argument is that a procedurally faultless affirmative injury determination is totally immune from judicial review, regardless of whether, or to what extent, any reasoning supports this finding.

In my opinion, the Court of International Trade properly rejected this argument. Although the ITC's findings of fact are not subject to the same substantial evidence standard that prevails in judicial review of most administrative action, the agency is required by section 201(d) to report its determination to the President, accompanied by "the basis therefor." Before the ITC can be deemed to have complied with this statute, it is therefore necessary, as Judge Carman held, that its Report "fairly apprise the President, interested parties, and the public of the reasoning underlying its recommendation." 596 F.Supp. at 1081.

In an analogous case, the Supreme Court recognized that the findings of the ITC's predecessor, the Tariff Commission, were not subject to the same standard of review as might ordinarily apply in administrative law cases. *Norwegian Nitrogen Co. v. United States,* 288 U.S. 294, 321, 53 S.Ct. 350, 360, 77 L.Ed. 796 (1933). Because Congress required by statute that the Com-

---

4. As we have said, the Commission had already noted that "the vast majority" of domestic mush-

room production is canned as opposed to jarred or frozen.

mission hold hearings, however, the Court held the agency to an implied standard of fairness in the conduct of its hearings. *Id.* The same principle should apply here to require the ITC to at least state the reasons for its findings, in addition to the findings themselves.

In the instant case, the Report of the ITC shows that this requirement has been met. Although the ITC's footnote referenced by the majority is not a model of clarity, I discern only one way in which it could be read, in the context of the remainder of the report—that frozen mushrooms are among "the subject imports in this case," but since canned mushrooms constitute 97 percent of the subject imports, the ITC's conclusions would be the same regardless of whether the import statistics for frozen and dried mushrooms were included in its analysis. It was thus for apparent reasons of convenience or conciseness of expression, rather than neglect or intentional exclusion, that the remainder of the Commissioners' statements of views dealt only with canned mushrooms. On that analysis, together with the specific inclusion of frozen mushrooms in the ITC's determination, I agree that the ITC acted within the confines of its discretion.