Slip Op. 09-48

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                :
ALMOND BROS. LUMBER CO. et al., :
                                :
            Plaintiffs,         : Before:  Richard K. Eaton, Judge
                                :
    v.                          : Court No. 08-00036
                                :
UNITED STATES, and              :
RON KIRK, UNITED STATES         :
TRADE REPRESENTATIVE,           :
                                :
            Defendants.         :
_____:

OPINION

[Defendants' motion to dismiss granted.]

Dated: May 20, 2009

*Saltman & Stevens, P.C.* (*Alan I. Saltman, Ruth G. Tiger and Marisol Rojo*) for plaintiffs.

*Michael F. Hertz*, Deputy Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, United States Department of Justice Commercial Litigation Branch, Civil Division (*David S. Silverbrand*); Office of the General Counsel, United States Trade Representative (*J. Daniel Stirk*); United States Customs and Border Protection (*Andrew Jones*), for defendants.

Eaton, Judge: This case involves the Softwood Lumber Agreement between the United States and Canada, which was entered into in 2006 to resolve the ongoing disputes between those countries relating to the softwood lumber trade. *See* Softwood Lumber Agreement Between the Government of Canada and the Government of the United States of America, U.S.-Can., Sept. 12, 2006, *available at* http://www.ustr.gov/assets/World_Regions/

Americas/Canada/asset_upload_file847_9896.pdf (last visited May 7, 2009) (hereinafter "Softwood Lumber Agreement" or "SLA").[1] Plaintiffs, each domestic producers of softwood lumber products, challenge a provision of the SLA that provides for the government of Canada to distribute $500 million solely to domestic lumber producers who are members of the Coalition for Fair Lumber Imports ("Coalition").

Before the court is defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* USCIT Rules 12(b)(1) and (5); Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."); Defs.' Mem. Support 2nd Mot. Dismiss ("Defs.' 2nd Mem."). Because the court lacks jurisdiction to hear plaintiffs' claims, the motion to dismiss is granted.

BACKGROUND

Both the United States and Canada have significant softwood lumber industries, and the majority of Canada's softwood lumber products are exported to the United States. *See* Defs.' Mem. 7. In May 2002, following investigations by the Department of Commerce ("Commerce") and the United States International Trade Commission ("ITC"), Commerce imposed both antidumping duties and

---

[1]     A copy of the Softwood Lumber Agreement is available in the library of the United States Court of International Trade.

countervailing duties on Canadian softwood lumber.  Certain

Softwood Lumber Products From Canada, 67 Fed. Reg. 36,068 (Dep't

of Commerce May 22, 2002) (notice of amended final determination

of sales at less than fair value and antidumping duty order);

Certain Softwood Lumber Products From Canada, 67 Fed. Reg. 36,070

(Dep't of Commerce May 22, 2002) (notice of amended final

affirmative countervailing duty determination and countervailing

duty order).  As a result of Commerce's imposition of these

unfair trade duties, legal disputes arose in various fora

including this Court, North American Free Trade Agreement

("NAFTA") tribunals, and the World Trade Organization. Defs.'

Mem. 7-8.[2]  One of the parties to many of these disputes was the

Coalition.  Defs.' Mem. 8.

I.   The Softwood Lumber Agreement

In 2006, the United States, through the United States Trade

Representative[3] ("USTR"), and the Government of Canada began

negotiations to resolve the various disputes.  The negotiations

---

[2]     A list of these proceedings may be found in the
Softwood Lumber Agreement, Annex 2A.

[3]     Pursuant to 19 U.S.C. § 2171, the USTR, established
within the Executive Office of the President, has "primary
responsibility for developing, and for coordinating the
implementation of, United States international trade policy . . .
and shall be the chief representative of the United States for,
international trade negotiations . . . ." 19 U.S.C.
§ 2171(c)(1)(A)-(C).

proved successful, and in September of that year the USTR and the Canadian representative executed the SLA. *See generally* Softwood Lumber Agreement. Pursuant to the Agreement, both governments, as well as all represented parties and participants, agreed to terminate the legal actions related to softwood lumber to which they were parties. *See* Softwood Lumber Agreement, art. II and Annex 2A; Second Am. Compl. ¶ 71; Defs.' Mem. 8.

The SLA also required the United States to revoke its countervailing and antidumping duty orders on softwood lumber from Canada, effective retroactively to May 22, 2002. Softwood Lumber Agreement, art. III, ¶ 1. The United States was thus required to refund the cash deposits it had collected from May 22, 2002 until the time the Agreement went into effect. Softwood Lumber Agreement, art. III, ¶ 2. Accordingly, effective October 12, 2006, Commerce instructed United States Customs and Border Protection to cease collection of cash deposits provided for in the unfair trade duty orders, liquidate all unliquidated entries, and "refund all deposits collected on such entries . . . to the importers of record."[4] Certain Softwood Lumber Products From Canada, 71 Fed. Reg. 61,714 (Dep't of Commerce Oct. 19, 2006) (notice of rescission of countervailing duty reviews and revocation of countervailing duty order); Certain Softwood

---

[4]     During the period from May 22, 2002 to the start of negotiations in 2006, the United States had collected approximately $5 billion in cash deposits. Defs.' Mem. 8.

Lumber Products From Canada, 71 Fed. Reg. 61,714 (Dep't of Commerce Oct. 19, 2006) (notice of rescission of antidumping duty reviews and revocation of antidumping duty order).[5]

In exchange, Canada agreed to impose certain "Export Measures"[6] on its domestic softwood lumber producers. Softwood Lumber Agreement, art. VI. Canada also agreed to purchase the rights to some of the cash deposits[7] to be refunded by the United States and distribute (1) $500 million to United States lumber producers identified as members of the Coalition; (2) $50 million to a binational industry council; and (3) $450 million for "meritorious initiatives" in the United States. *See* Softwood Lumber Agreement, art. IV and Annex 2C, ¶ 5 ("Canada or its agent shall distribute . . . $US 500 million to the members of the Coalition for Fair Lumber Imports . . . .").

With respect to the intended recipients, the United States

---

[5] In addition, the United States agreed, until at least the year 2013, not to initiate any antidumping or countervailing duty investigations under Title VII of the Tariff Act of 1930 or any successor law, actions under Section 201 to 204, or 301 to 307 of the Trade Act of 1974, or Section 204 of the Agriculture Act of 1956 with respect to imports of softwood lumber products from Canada. Softwood Lumber Agreement, art. V, ¶ 1(a)-(d).

[6] Export measures are essentially quotas or export taxes. *See* Softwood Lumber Agreement, art. XXI, ¶ 23.

[7] "Canada or its agent shall purchase the rights to the amounts of the cash deposits for Covered Entries and accrued interest from the Escrow Importers and make disbursements in accordance with Annex 2C." Softwood Lumber Agreement, art. IV, ¶ 4.

was required to provide Canada with "information identifying . .

. beneficiaries." Softwood Lumber Agreement, Annex 2C, ¶ 4.

Beneficiaries included "the members of the Coalition for Fair

Lumber Imports." *Id.* Plaintiffs, domestic lumber producers,

were not members of the Coalition, and thus, were not designated

as beneficiaries of the distributed funds.

II.  Plaintiffs' Complaint

On March 14, 2008 plaintiffs filed an amended complaint[8]

containing two counts relating to payments made by Canada

---

[8]     Plaintiffs sought voluntary dismissal of Count I of its
Second Amended Complaint on October 10, 2008. Pls.' Notice of
Dismissal of Count 1.  On January 29, 2008, plaintiffs filed a
complaint with this Court alleging that the USTR violated the
Continued Dumping and Subsidy Offset Act ("CDSOA") by failing to
distribute funds to all affected domestic producers.  Compl.
¶ 68.  Congress enacted the CDSOA, (commonly referred to as the
"Byrd Amendment"), in October 2000. 19 U.S.C. § 1675c, *repealed
by* Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154 (2006).  Thus,
plaintiffs initially based their case on provisions of the CDSOA
which state that duties assessed pursuant to a countervailing
duty order or an antidumping duty order shall be distributed on
an annual basis "to the affected domestic producers for
qualifying expenditures." *Id.*  Plaintiffs insisted, in their
initial complaint, that they were entitled to distributions
pursuant to the CDSOA.

Apparently, plaintiffs' voluntary dismissal resulted from
the opinion in *Canadian Lumber Trade Alliance v. United States,*
517 F.3d 1319 (Fed. Cir. 2008), *cert. denied, United States Steel
Corp. v. Canadian Lumber Trade Alliance*, 129 S. Ct. 344 (U.S.
Oct. 6, 2008) (No. 07-1470), which held that the CDSOA does not
apply to antidumping and countervailing duties assessed on
imports of goods from NAFTA member countries, such as Canada.

pursuant to the SLA.  *See* First Am. Compl.  By these Counts II
and III, plaintiffs challenged the legality of the defendants'
identification as beneficiaries of the Canadian payments "only
members of the Coalition."  *See* Pls.' Opp. 1.  Specifically, in
Count II, plaintiffs alleged that defendants

> did not require the Government of Canada to
> distribute any of the money in question on a
> pro-rata basis to all 240+ members of the
> domestic softwood lumber industry that were
> adversely affected by illegal dumping and
> subsidies of Canadian softwood lumber.
> Instead, defendants required only that Canada
> make a distribution to an account whose sole
> beneficiaries were the approximately 100
> domestic softwood lumber companies that
> belonged to a particular organization - the
> Coalition for Fair Lumber Imports.

First Am. Compl. ¶ 81.  Count II asserts that the identification
of Coalition members as the sole beneficiaries of the Canadian
payments violated the Administrative Procedure Act ("APA"), 5
U.S.C. ¶ 706, by being "'arbitrary, capricious, an abuse of
discretion or otherwise not in accordance with law . . . .'"
First Am. Compl. ¶ 84.

In addition, the amended complaint contained Count III which

> alleges that defendants' actions in requiring
> Canada to make distribution to only those
> adversely affected domestic producers who
> were also members of the Coalition and not to
> all affected domestic producers on its face
> violates the Equal Protection component of
> the Due Process Clause of the Fifth Amendment
> to the Constitution by impermissibly
> discriminating between similarly situated
> producers and denying a benefit to certain of
> those producers.

First Am. Compl. ¶ 88.  As to Count III, plaintiffs insisted that there was "no legitimate governmental purpose for defendants having discriminated among affected domestic producers. . . ." First Am. Compl. ¶ 89.  On April 17, 2008 defendants filed their first motion to dismiss (1) for lack of subject matter jurisdiction based on the political question doctrine,[9] or alternatively (2) for an alleged failure by plaintiffs to state claims upon which relief can be granted.  *See* Defs.' Mem.; USCIT Rules 12(b)(1) and (5).

Thereafter, plaintiffs filed a second amended complaint which added Count IV by which plaintiffs "challenge[d] actions of defendants in requiring the Government of Canada to make a compensatory payment in the amount of $500 million to an account whose sole beneficiaries were the members of the Coalition." Second Am. Compl. ¶ 91 (allegation in support of Count IV). Plaintiffs asserted that Canada's payment of $500 million to affected domestic producers was a "governmental function" of the United States and that "[t]he determination of exactly how this compensatory payment by Canada should be divided among all adversely affected domestic softwood lumber producers was a

---

[9]     Based on separation of powers concerns, the political question doctrine precludes judicial review of subject matter such as government agreements with foreign powers.  The doctrine prevents the judiciary from stepping into the executive branch's political realm.  *See Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 401-402 (2d Cir. 1977).

governmental function which could not legally be delegated to non-governmental entities such as the members of the Coalition." Second Am. Compl. ¶ 92.  In other words, plaintiffs argued that defendants should not have directed the $500 payment solely to members of the Coalition and, in addition, should not have allowed the Coalition to distribute that payment based on "how much money each member of the Coalition had contributed to the Coalition's litigation efforts."  Second Am. Compl. ¶ 94.

Defendants then filed a second motion to dismiss, reiterating their initial argument under the political question doctrine, adding a lack of subject matter jurisdiction argument, and seeking to dismiss all counts for failure to state a claim upon which relief could be granted. *See* Defs.' 2nd Mem. 2.


DEFENDANTS' MOTION TO DISMISS

I.  Establishing Jurisdiction

"A jurisdictional challenge to the court's consideration of Plaintiff's action raises a threshold inquiry."  *Hartford Fire Ins. Co. v. United States*, 31 CIT __, __, 507 F. Supp. 2d 1331, 1334 (2007) (citations omitted).  Thus, before reaching the merits of plaintiffs' complaint, the court must assess defendants' motion to dismiss for lack of subject matter jurisdiction.

"The party seeking to invoke this Court's jurisdiction has the burden of establishing such jurisdiction." *Autoalliance Int'l, Inc. v. United States*, 29 CIT 1082, 1088, 398 F. Supp. 2d 1326, 1332 (2005) (citations omitted) ("*Autoalliance Int'l*").  A "mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling . . . ."  *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quotation omitted).  "To avoid dismissal in whole or in part for lack of subject matter jurisdiction, [plaintiffs] must plead facts from which the court may conclude that it has subject matter jurisdiction with respect to each of their claims." *Schick v. United States*, 31 CIT __, __, 533 F. Supp. 2d 1276, 1281 (2007) ("*Schick*") (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (explaining that a plaintiff "must allege in his pleading the facts essential to show jurisdiction.")).


II.  Parties' Arguments

As noted, defendants argue in their motion to dismiss that there are several reasons why the court is barred from entertaining plaintiffs' claims.  Their primary contention, however, is that the court does not possess jurisdiction under 28 U.S.C. § 1581.  *See* Defs.' 2nd Mem. 4.  As set forth below, the

court finds that plaintiffs fail to meet their burden of establishing jurisdiction because they fail to plead sufficient facts in support of jurisdiction.  *See Schick*, 31 CIT at __, 533 F. Supp. 2d at 1281.  Accordingly, the court does not reach the other arguments in defendants' motion to dismiss.

Plaintiffs insist that the court has jurisdiction over its complaint pursuant to both 28 U.S.C. § 1581(i)(2)[10] and (i)(4). In an effort to satisfy the requirement that they plead facts sufficient for the court to conclude that it has jurisdiction, plaintiffs allege that jurisdiction exists based on the

---

[10]     28 U.S.C. § 1581(i) states:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

negotiation and entry into force of the SLA and the
administration and enforcement by defendants of the agreement.
*See* Pls.' 2nd Opp. 4.  The law identified by plaintiffs as
providing jurisdiction is section 301 of the Trade Act of 1974,
codified at 19 U.S.C. § 2411(c).  Pls.' 2nd Opp. 4.  Thus, the
linchpin for plaintiffs' jurisdictional claim is that the SLA was
both negotiated and entered into by the USTR pursuant to the
authority given her[11] in 19 U.S.C. § 2411(c)(1)(D).[12]  Under that

---

[11]     The USTR at the time of the negotiation and entry into
force of the SLA was Susan Schwab.

[12]     Under § 2411(c)(1)(D), if the USTR determines that the
rights of the United States under any trade agreement are being
denied, or that an act, policy, or practice of a foreign country
violates a United States trade agreement or burdens or restricts
United States commerce, the USTR is authorized to

> enter into binding agreements with such foreign country
> that commit such foreign country to—
>
>> (i) eliminate, or phase out, the act, policy,
>> or practice that is the subject of the action
>> to be taken under subsection (a) or (b) of
>> this section,
>>
>> (ii) eliminate any burden or restriction on
>> United States commerce resulting from such
>> act, policy, or practice, or
>>
>> (iii) provide the United States with
>> compensatory trade benefits that—
>>
>>> (I) are satisfactory to the Trade
>>> Representative, and
>>>
>>> (II) meet the requirements of
>>> paragraph (4).

(continued...)

provision, whenever the USTR "determines that any act, policy, or practice of a foreign country is unjustifiable and burdens or restricts United States commerce, or is unreasonable or discriminatory and burdens or restricts United States commerce," the trade representative may enter into agreements with such foreign country committing that country to eliminate the act, policy or practice or provide the United States with compensatory trade benefits.[13]  *See* Pls.' 2nd Opp. 4-5 (citing 19 U.S.C. § 2411(c)(1)(D)).  Plaintiffs contend that this is what occurred here and that by

---

[12](...continued)
19 U.S.C. § 2411(c)(D).

Paragraph 4 of the statute provides:

> (4) Any trade agreement described in paragraph (1)(D)(iii) shall provide compensatory trade benefits that benefit the economic sector which includes the domestic industry that would benefit from the elimination of the act, policy, or practice that is the subject of the action to be taken under subsection (a) or (b) of this section.
> . . .

19 U.S.C. § 2411(c)(4).


[13]    Examples of the USTR's published determinations documenting the exercise of this authority are: Determination Under Section 304 of the Trade Act of 1974 [19 U.S.C. § 2414]: Practices of the Government of India Regarding Patent Protection for Pharmaceuticals and Agricultural Chemicals, 63 Fed. Reg. 29,053 (Office of the USTR May 27, 1998); Notice of Agreement; Monitoring and Enforcement Pursuant to Sections 301 and 306 [19 U.S.C. § 2416]: Canadian Exports of Softwood Lumber, 61 Fed. Reg. 28,262 (Office of the USTR June 5, 1996).

> entering into the SLA and requiring therein
> that Canada provide a compensatory trade
> benefit in the form of the payment to
> domestic softwood lumber producers of a
> portion of the estimated duties which the
> United States had collected and then refunded
> to Canada, the USTR was acting pursuant to
> her authority under 19 U.S.C. 2411(c)(1)(D)
> in addition to acting in accordance with her
> general duties and responsibilities under 19
> U.S.C. § 2171.

Pls.' 2nd Opp. 5 (footnote omitted). Put another way, plaintiffs maintain that the court has § 1581(i) jurisdiction because the SLA was negotiated pursuant to 19 U.S.C. § 2411(c)(1)(D), which provides for the entry into agreements that provide for compensatory trade benefits.[14] Apparently, for plaintiffs, these compensatory trade benefits are the equivalent of duties. *See* 28 U.S.C. § 1581(i)(2) ("the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . duties . . . on the importation of merchandise for reasons other than the raising of revenue . . . .").

---

[14] Although plaintiffs seem to base a portion of their argument on the notion that the payments to the Coalition are compensatory trade benefits, the court does not believe that the actual existence of compensatory trade benefits under the SLA is determinative for purposes of jurisdiction. Under 19 U.S.C. § 2411(c)(1)(B), the USTR may, under certain circumstances, impose duties. For the court, if the SLA were indeed the product of § 2411 then, because the statute provides for the imposition of duties, the court would have jurisdiction pursuant to the "arising under" provision of 28 U.S.C. § 1581(i).

Defendants respond that the SLA was simply not negotiated nor executed pursuant to § 2411(c)(1)(D).  Defs.' Reply 2 ("[N]o part of the negotiations or entry into force of the SLA entailed any statutory authority derived from 19 U.S.C. § 2411 . . . .").  Defendants further argue that plaintiffs have offered no support for their contention that the USTR negotiated or entered into the SLA pursuant to § 2411 as is required to establish jurisdiction.  *See Schick*, 31 CIT at __, 533 F. Supp. 2d at 1281 (stating that plaintiffs "must plead facts from which the court may conclude that it has subject matter jurisdiction with respect to each of their claims.").  Rather, defendants contend that "the overall authority and functions" of the USTR are found in 19 U.S.C. § 2171, which, *inter alia*, invests the USTR with the duty to develop and coordinate the implementation of United States international trade policy.  Defs.' Reply 2; *see* 19 U.S.C. § 2171(c)(1)(A).  Defendants thus urge the court to find that plaintiffs have not satisfied their burden of alleging facts sufficient to find that it has jurisdiction over plaintiffs' claims.


III. Plaintiffs Fail to Meet Their Burden of Demonstrating
     Jurisdiction

Like all federal courts, the Court of International Trade is a court of limited jurisdiction.  As such, the Court has an

obligation to "determine that the matter brought before it remains within the metes and bounds of such delimitation." *Agro Dutch Indus. Ltd. v. United States*, 29 CIT __, __, 358 F. Supp. 2d 1293, 1294 (2005) (citation omitted).  A primary source of federal jurisdiction rests in "arising under" jurisdiction.  The principal federal statute providing for this jurisdiction is 28 U.S.C. § 1331, which grants jurisdiction to the federal district courts for claims "arising under" federal law.[15]  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."); *see* Wright, Miller, & Cooper, 13D Fed. Prac. & Proc. 3d § 3562.

---

[15]    The outer limits of the federal courts' subject matter jurisdiction are set forth in Article III, Section 2 of the United States Constitution, which states:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;-to all Cases affecting Ambassadors, other public Minister and Consuls;-to all Cases of admiralty and maritime Jurisdiction;-to Controversies to which the United States shall be a Party;-to Controversies between two or more States;-between and State and Citizens of another State;-between Citizens of different States;-between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1.

The statute under which plaintiffs claim jurisdiction here, 19 U.S.C. § 1581(i)(4), is also an "arising under" statute.  *See* 28 U.S.C. § 1581(i)(2) (actions arising out of a law providing for duties on the importation of merchandise other than for raising revenue) and 28 U.S.C. § 1581(i)(4) (actions arising out of the administration and enforcement of paragraph (2) of this subsection); *Schick v. United States*, 554 F.3d 992 (Fed. Cir. 2009) (finding that the trial court lacked jurisdiction to consider claim under § 1581(i)(4) where claim did not arise out of a law providing for the administration and enforcement of matters referred to in 19 U.S.C. § 1581(g)(2)).  As noted, the sole arising under statute cited by plaintiffs as the basis for § 1581(i) jurisdiction is 19 U.S.C § 2411(c)(1)(D).  *See* 19 U.S.C. § 2411(c)(1)(D).

Beyond the bare claim that the SLA was the product of § 2411, however, plaintiffs provide no support for their contention that it was negotiated or executed pursuant to that statute, despite having ample opportunity to do so.  Defendants filed their motion to dismiss the second amended complaint on October 24, 2008, contesting, among other things, the court's subject matter jurisdiction.  *See* Defs.' 2nd Mem. 5, citing 28 U.S.C. § 1581(i)(4) ("The Court does not possess jurisdiction in this case because Almond Brothers has neither alleged a claim that arises out of any law of the types identified, nor a claim

that arises out of the administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.'"). Given the chance to provide supporting jurisdictional facts, on December 1, 2008, plaintiffs filed their opposition brief, claiming that this Court does have jurisdiction over Counts II-IV of plaintiffs' complaint "pursuant to both 28 U.S.C. § 1581(i)(2) and § 1581(i)(4) because each count arises out of a law providing for duties on the importation of merchandise and the administration and enforcement by defendants with respect to estimated duties, specifically, section 301 of the Trade Act of 1974, 19 U.S.C. § 2411(c)." Pls.' 2nd Opp. 4. However, the opposition brief failed to provide any facts to support this claim.

Defendants, in their reply brief filed January 12, 2009, noted, "Almond Bros. has failed to provide any support for its contention that the SLA was negotiated or entered into pursuant to section 301 authority. In fact, there is no support for such an argument." Defs.' 2nd Reply 4. Indeed, as defendants point out, there is no indication that the USTR performed any of the actions required by the provisions governing § 2411 before she commenced the negotiations resulting in the entry into force of the SLA. *See* Defs.' 2nd Reply 4.

Plaintiffs received another chance to plead facts

demonstrating that the SLA was negotiated or entered into pursuant to § 2411 when they requested and received the court's permission to file a sur-reply to defendants' reply in support of their motion to dismiss.  *See* Pls.' Sur-reply to Defs.' Reply Supp. Mot. Dismiss.  In the sur-reply, filed on February 6, 2009, plaintiffs again failed to assert any of the necessary jurisdictional facts in support of their argument that the SLA was negotiated or entered into pursuant to § 2411.  In short, plaintiffs have had their chance to support their argument with jurisdictional facts and have failed to do so.

Pursuant to USCIT Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction . . . ."  Further, while jurisdictional facts are normally found in the complaint, it is well settled that in considering a Rule 12(b)(1) motion contesting jurisdiction, the court may consider matters outside the pleadings. *See, e.g., Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).  Specifically,

> When reviewing a motion to dismiss pursuant to USCIT Rule 12(b)(1), the court must determine whether the moving party is attacking the sufficiency of the jurisdictional pleadings or the factual basis for the court's jurisdiction.  If a motion to dismiss refutes or contradicts the plaintiff's jurisdictional allegations, the court treats the motion as questioning the factual basis for the court's subject matter

> jurisdiction.  "In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion."  *Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (internal citations omitted).  All other facts underlying the jurisdictional claims are in dispute and are subject to fact-finding by this Court.  Thus, a court may review evidence outside the pleadings to determine facts necessary to rule on the jurisdictional issue.

*Autoalliance Int'l,* 29 CIT at 1088-89, 398 F. Supp. 2d at 1332 (internal citations omitted).

Accordingly, in light of the dearth of jurisdictional facts in the pleadings, the court has looked to the public record, i.e., the Federal Register, to determine if the SLA was negotiated or executed pursuant to § 2411.

First, it should be noted that the SLA itself does not state the authority that authorized its negotiation or entry into force.  *See* Softwood Lumber Agreement, art. II.  Second, an examination of the public record reveals no basis to believe that 19 U.S.C. § 2411 provided the authority used by the USTR to negotiate or execute the SLA.

In accordance with the codified statute, prior to taking the retaliatory actions [16] [17] authorized by § 2411(c)(1)(D), the USTR

---

[16]    If the United States Trade Representative determines under section 2414(a)(1) of this title that—

(continued...)

[16](...continued)
> (A) the rights of the United States under any trade agreement are being denied; or
>
> (B) an act, policy, or practice of a foreign country—
>
>> (i) violates, or is inconsistent with, the provisions of, or otherwise denies benefits to the United States under, any trade agreement, or
>>
>> (ii) is unjustifiable and burdens or restricts United States commerce;
>
> the Trade Representative shall take action authorized in subsection (c) of this section, subject to the specific direction, if any, of the President regarding any such action, and shall take all other appropriate and feasible action within the power of the President that the President may direct the Trade Representative to take under this subsection, to enforce such rights or to obtain the elimination of such act, policy, or practice. Actions may be taken that are within the power of the President with respect to trade in any goods or services, or with respect to any other area of pertinent relations with the foreign country.

19 U.S.C. § 2411(a)(1).

[17]     If the Trade Representative determines under section 2414(a)(1) of this title that—

> (1) an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and
>
> (2) action by the United States is appropriate, the Trade Representative shall

(continued...)

must conduct an investigation and make a determination.  *See* 19 U.S.C. § § 2412, 2414.  Thus, the sections succeeding 19 U.S.C. § 2411 set out the steps that the USTR must perform before action can be taken under § 2411.  Here, the published public record demonstrates that none of these steps was taken prior to the negotiation of the SLA.  Specifically, the USTR did not initiate any type of investigation pursuant to § 2412 or make a determination pursuant to § 2414 before negotiating the Agreement.  *See* 19 U.S.C. § 2411(a) and (b).

That no investigation was commenced can be shown by the publication requirement.  "If the Trade Representative determines that an investigation should be initiated under this subchapter with respect to any matter in order to determine whether the matter is actionable under section 2411 of this title, the Trade Representative shall publish such determination in the Federal Register and shall initiate such investigation."  19 U.S.C.

---

[17](...continued)
> take all appropriate and feasible action
> authorized under subsection (c) [referring to
> the scope of authority under § 2411] of this
> section, subject to the specific direction,
> if any, of the President regarding any such
> action, and all other appropriate and
> feasible action within the power of the
> President that the President may direct the
> Trade Representative to take under this
> subsection, to obtain the elimination of that
> act, policy, or practice. . . .

19 U.S.C. § 2411(b).

§ 2412(b)(1)(A).[18]

Neither is there any indication that the USTR made the necessary determination pursuant to § 2414 before the SLA was negotiated:

> On the basis of the investigation initiated under section 2412 of this title and the consultations (and the proceedings, if applicable) under section 2413 of this title, the Trade Representative shall—
>
> (A) determine whether—
>
>> (i) the rights to which the United States is entitled under any trade agreement are being denied, or
>>
>> (ii) any act, policy, or practice described in subsection (a)(1)(B) or (b)(1) of section 2411 of this title exists, and
>
> (B) if the determination made under subparagraph (A) is affirmative, determine what action, if any, the Trade Representative should take under subsection (a) or (b) of section 2411 of this title.

19 U.S.C. § 2414(a).

Had the USTR made any determination pursuant to § 2414(a),

---

[18]    *See, e.g.*, Initiation of Section 302 [19 U.S.C. § 2412] Investigation and Request for Public Comment: Wheat Trading Practices of the Canadian Wheat Board, 65 Fed. Reg. 69,362 (Office of the USTR November 16, 2000) (notice announcing the initiation of an "investigation to determine whether certain acts, policies or practices of the Government of Canada and the Canadian Wheat Board with respect to wheat trading are unreasonable and burden or restrict U.S. commerce and are, therefore, actionable under section 301."). No equivalent publication relating to an investigation undertaken pursuant to § 2411 prior to the SLA's negotiation could be found.

that determination, too, would have been published in the Federal Register pursuant to 19 U.S.C. § 2414(c). 19 U.S.C. § 2414(c) ("The Trade Representative shall publish in the Federal Register any determination made under subsection (a)(1) of this section, together with a description of the facts on which such determination is based.").[19] No publication relating to a determination undertaken pursuant to § 2411 could be found with respect to the negotiation or entry into force of the SLA. Consequently, there can be no argument that the SLA was the product of § 2411 because there is no evidence that the USTR performed any of the required acts that could result in action thereunder.

As stated previously, plaintiffs' sole basis for invoking the jurisdiction of the court is that the SLA was negotiated and entered into pursuant to 19 U.S.C. § 2411(c)(1)(D). Because they have failed to meet their burden of pleading facts from which the court could conclude that the SLA was indeed the product of

---

[19] It is worth noting that the USTR has sought to comply with the provisions relating to investigations and determinations when seeking to enforce the SLA. *See* Initiation of Section 302 [19 U.S.C. § 2412] Investigation, Determination of Action Under 301, and Request for Comments: Canada -- Compliance with Softwood Lumber Agreement, 74 Fed. Reg. 16,436 (Office of the USTR Apr. 10, 2009) (notice of initiation of investigation of and determination that Canada "is denying U.S. rights under the SLA"). The notice of initiation of investigation pursuant to a violation under the SLA further underscores the plaintiffs' failure to submit evidence that the negotiation and entry into force of the SLA itself was the product of USTR action under section 301.

§ 2411, the court cannot accept plaintiffs' argument that it has jurisdiction under the arising under provisions of § 1581(i). *See Autoalliance Int'l,* 29 CIT at 1088, 398 F. Supp. 2d at 1332. That being the case, the court finds that it does not have jurisdiction to hear the claims made in plaintiffs' complaint.[20]

CONCLUSION

Based on the Court's lack of subject matter jurisdiction, defendants' motion to dismiss is granted and plaintiffs' complaint is dismissed.

/s/ Richard K. Eaton
Richard K. Eaton

Dated:     May 20, 2009
           New York, New York

---

[20] The court does not reach defendants' arguments for dismissal pursuant to the political question doctrine or for failure to state a claim. However, it should be noted that plaintiffs' claims cannot succeed if a court is asked to review the substance of an executive agreement, rather than to review a claim that the agreement violates a specific statute or Constitutional right. *See, e.g., Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 402 (2d Cir. 1977).